**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CAMPBELL PRODUCTS DEPARTMENT, HARRY T. CAMPBELL SONS COMPANY, DIVISION OF FLINTKOTE COMPANY, Respondent.**

**No. 79–2009.**

United States Court of Appeals, Third Circuit.

Argued April 22, 1980.
Decided June 27, 1980.

---

Warren M. Davison (argued), Earle K. Shawe, Leslie R. Stellman, Shawe & Rosenthal, Baltimore, Md., for respondent.

Lawrence J. Song (argued), William A. Lubbers, John E. Higgins, Jr., Robert E. Allen, Elliott Moore, N. L. R. B., Washington, D. C., for petitioner.

Before ALDISERT, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

The National Labor Relations Board here petitions for enforcement of its order directing the respondent, Campbell Products, to bargain collectively with Teamsters Local No. 560. After a consent election, the Teamsters had been certified in an earlier representation proceeding before the Board as the bargaining representative of Campbell's production and maintenance employees. Campbell claims that the certification of the union was defective because the Board's regional director improperly refused to investigate an objection to union conduct that took place during the election. We agree with Campbell that the regional director's refusal to investigate was a violation of Board policy. We therefore deny enforcement of the Board's order.

I.

Pursuant to a Stipulation for Certification Upon Consent Election, on May 20, 1977 a representation election was held at Campbell Products' Kenvil, New Jersey facility. In this election, the production and maintenance employees cast 25 votes in favor of the union, Teamsters Local No. 560. Eighteen employees voted against the union. Two ballots were challenged and were not counted. Shortly after the election, on or about May 25, 1977, Campbell filed a timely objection to union conduct which Campbell alleged had improperly influenced the balloting.[1] This objection, in its entirety, stated that: "[d]uring the period that

---

1. The Board's regulations, as discussed in text, *infra*, require that objections be filed "[w]ithin 5 days after the tally of ballots has been furnished." 29 C.F.R. § 102.69(a) (1979). The parties disagree on the date on which Campbell filed its objection; Campbell claims it was filed on May 25, 1977, and the Board claims May 27, 1977. Neither party notes the date on which the tally of ballots was furnished. They agree, however, that this first objection was timely filed.

the election was in progress and while the polls were open, a known Union adherent engaged in electioneering activities in the vicinity of the polling place among a group of employees who were waiting to enter the polling place to vote in the election."

By letter dated June 6, 1977, Campbell asserted a second objection to union conduct that had occurred during the election. In this letter, Campbell contended that the union had told employees at a meeting held shortly before the election, that the company would weed out union supporters if the union lost. Although the letter was received before the regional director had commenced investigation of the first filed objection, the letter concededly was not filed within the five day period specified in the Board's regulation for filing objections. 29 C.F.R. § 102.69(a) (1979) provides in pertinent part:

> Within 5 days after the tally of ballots has been furnished, any party may file with the regional director an original and three copies of objections to the conduct of the election or conduct affecting the results of the election, which shall contain a short statement of the reasons therefor. Such filing must be timely whether or not the challenged ballots are sufficient in number to affect the results of the election.

Campbell claims that the reason that it failed to file this objection within the time provided by the regulation was that it only learned of the challenged remarks after the five day period had expired. The Board does not dispute this assertion.

The regional director issued his report and recommendations in response to Campbell's objections on July 5, 1977. In the body of the report, he discussed only the objection that had been timely filed, recommending to the Board that it be rejected without a hearing. In a footnote, he noted that Campbell had raised a second objection, but that this objection had been filed out of time. Thus, he did not consider it for that reason: "[Since] the correspondence was received twelve days past the deadline for timely filing of objections, it is untimely

and will not be considered." The regional director wrote further in that footnote that "[e]ven assuming, however, that this objection had been timely, it is noted that the investigation disclosed no probative evidence that such statements had been made."

Campbell filed exceptions to the regional director's report, but the Board adopted the regional director's recommendations and certified the union as the exclusive bargaining representative.

The bargaining order whose enforcement is sought here arose from a later unfair labor practice proceeding before the Board. After being certified as bargaining representative, the union requested Campbell to begin contract negotiations on October 11, 1977. Campbell refused to do so by letter of October 18, 1977, and has continued to so refuse since that time. Campbell, recognizing that the National Labor Relations Act provides for judicial review only of Board orders in unfair labor practice proceedings, not orders entered in representation proceedings, R. Gorman, Labor Law 59–61 (1976); see *NLRB v. Sun Drug Co.*, 359 F.2d 408, 414 (3d Cir. 1966), has refused to bargain in order to seek judicial review of the Board's action in rejecting the two objections it made to union conduct during the election campaign.

The Board's general counsel filed a complaint charging Campbell with an unfair labor practice under §§ 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) & (5) (1976), for refusing to bargain with a properly certified union. The general counsel then moved for summary judgment, which the Board granted. The Board's position is that absent a showing of newly discovered or previously unavailable evidence, matters litigated in a representation proceeding may not be relitigated before the Board in an unfair labor practice proceeding arising out of a refusal to bargain. See *Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 141, 91 S.Ct. 599, 601, 27 L.Ed.2d 735 (1971); *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251 (1941); *NLRB*

*v. Certified Testing Laboratories, Inc.,* 387 F.2d 275, 279 (3d Cir. 1967). Thus, the summary judgment, determining that Campbell had committed an unfair labor practice by refusing to bargain with the union, ripened the proceedings for judicial review.

The Board then brought in this court the present petition for enforcement of its order directing Campbell to bargain with the union. Campbell resists on the same two grounds that it has asserted through the course of these proceedings. First, it claims that electioneering by a union adherent in the course of the balloting requires setting aside the election. Second, it claims that the union's remarks that the company would fire union adherents if the union was defeated likewise requires setting aside the election. Subsumed within both grounds of objection, was a subsidiary claim made by Campbell that the Board erred in refusing to hold an evidentiary hearing on these objections. We address these assertions of error in turn.

## II.

Campbell's first objection concerns electioneering by a union supporter during the course of the balloting. Campbell claims that one employee, who was an active union adherent, engaged in sustained conversation with several other eligible voters when these voters were on their way to cast their ballots. As noted, the Board rejected this contention without holding an evidentiary hearing, adopting the regional director's recommendation. We can find no error in the Board's disposition of this objection.

█ A party is entitled to an evidentiary hearing where its objection raises substantial and material issues of fact. *NLRB v. Sun Drug Co.,* 359 F.2d 408, 414 (3d Cir. 1966). As a corollary, no hearing is necessary where the Board assumes the truth of the party's contentions, and then rules as a matter of law that, assuming the facts alleged, the challenged conduct does not warrant setting aside the election. *Id.* This was the course chosen by the regional director in refusing to hold a hearing on Campbell's first objection. We need only determine, then, whether the Board made an error of law in adopting the regional director's recommendation.

█ The Board has wide discretion in evaluating the circumstances surrounding an election and determining whether these circumstances allowed a free and fair choice by the voters. *NLRB v. El-Ge Potato Chip Co.,* 427 F.2d 903, 906 (3d Cir. 1970), *cert. denied,* 401 U.S. 909, 91 S.Ct. 869, 27 L.Ed.2d 807 (1971); *NLRB v. Clearfield Cheese Co.,* 322 F.2d 89, 92–93 (3d Cir. 1963). In exercising this discretion, the Board has consistently distinguished between electioneering by an agent or representative of a *party* to the election, on which the Board takes a strict view, *see, e. g., Pastoor Brothers Co.,* 223 NLRB 451 (1976); *Modern Hard Chrome Service Co.,* 187 NLRB 82 (1970); *Milchem, Inc.,* 170 NLRB 362 (1968), and electioneering by a mere rank and file employee, of which it is more tolerant, *see, e. g., NLRB v. Monroe Auto Equipment Co.,* 470 F.2d 1329, 1332 (5th Cir. 1972), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); *NLRB v. Staub Cleaners, Inc.,* 418 F.2d 1086, 1088 (2d Cir. 1969), *cert. denied,* 397 U.S. 1038, 90 S.Ct. 1357, 25 L.Ed.2d 649 (1970); *Orleans Manufacturing Co.,* 120 NLRB 630, 633 (1958).[2] This distinction amply supports the Board's conclusion that the electioneering in the instant case, which was undertaken by a mere employee, did not warrant setting aside the election. We hold that the Board did not err, then, in the disposition of Campbell's first objection.

**2.** *Claussen Baking Co.,* 134 NLRB 111 (1961), *relied on by Campbell to undermine the Board's position,* is not to the contrary, but rather conforms strictly with this distinction. There, the electioneering was done by a "sanitation department leadman" who was flanked at the time by the company's plant operation manager and sales supervisor. The Board specifical-

ly ruled that this could not be regarded as electioneering by a mere rank and file employee, but, rather, that it had to be attributed to the employer. 134 NLRB at 112. Thus, the Board's application of a strict rule against electioneering near the polls in *Claussen* in no way undermines the distinction explained in text.

### III.

■ Campbell's second objection focuses on the remarks which Campbell claims were made at a union meeting held shortly before the election. Campbell charges that at that meeting the employees were told that the company would fire union supporters if the union lost the election. As noted, Campbell presented this objection in a letter to the regional director after the five day objection period specified in 29 C.F.R. § 102.69(a) (1979) had expired. The regional director, and then the Board, refused to consider this objection on the ground that it was filed out of time.[3] The Board now contends that its refusal was proper. Campbell responds, and we agree, that the Board has an established, nondiscretionary policy to the contrary: once a timely objection has been registered and triggers an investigation, a regional director *must* consider *all* evidence of improper conduct that is uncovered or brought to his attention in the course of his investigation, whether or not such conduct was the subject of the objection that was timely filed. We therefore conclude that the regional director and the Board acted improperly in refusing to consider Campbell's second objection on the ground that it was filed out of time.

We recognize that rules requiring strict compliance with deadlines for raising issues or defenses are not only useful but, indeed, essential for adjudicative bodies. Courts employ such rules as a matter of course. The cases are legion in which a variety of valid defenses, such as a lack of personal jurisdiction, the statute of frauds, and the like, are deemed waived when a party fails to plead or present them at the proper time. We do not doubt that such rules are as important to the National Labor Relations Board as they are to the courts. Thus, we believe that the Board plainly has the *power* to compel strict compliance with its five day objection rule.

■ A concern for efficient administration of the statutory representative election scheme is not, of course, the sole consideration relevant here. There is also at least as great, if not a greater, interest in the parties' conduct in the course of an election campaign so as to assure that the employees' choice is a free and fair one. Such an interest requires careful attention to the disposition of objections filed by a party to the election, and encourages the Board to consider such objections even if they are not timely raised. These conflicting interests confer on the Board, as an initial matter,

**3.** The Board contends in its brief, and took the position at oral argument, that Campbell's second objection in fact *had* been fully investigated by the regional director, but the investigation disclosed no evidence in support of the objection. The Board thus claims that the denial of Campbell's objection and the refusal to hold a hearing were appropriate for that reason. The Board points to the footnote in the regional director's report which, after ruling that Campbell's second objection would not be considered because it was filed out of time, states that "[e]ven assuming, however, that this objection had been timely, it is noted that the investigation disclosed no probative evidence that such statements had been made." The Board suggests that we must accept this declaration at face value, and that we must conclude that a full and complete investigation had been conducted.

We do not agree with the Board that we are foreclosed from examining the record giving rise to the director's ostensible ruling on the merits, particularly in light of the Board's policy that we discuss hereafter in text. There was considerable confusion at oral argument over

the exact extent of the regional director's investigation of this objection. Nor do the briefs or our examination of the record itself dispel that confusion. At the very least, in the face of a challenge such as Campbell has mounted here, we are entitled to a record which reveals the particulars of the investigation so that we may review its adequacy. The present record is deficient in this respect.

It seems clear to us that, if anything, the regional director did no more than talk to the single individual who was named in an admittedly hearsay affidavit as the source of Campbell's belief that the union had made the challenged remarks. Campbell claimed that the investigation was not even this extensive, that the regional director interviewed only the affiant, who had no personal knowledge of what went on at the meeting, and never spoke to the employee named in the affidavit. The director apparently made no effort to identify and interview the other individuals who were at the meeting, or, indeed, the alleged speaker.

We do not consider this "investigation" sufficient to permit us to sustain the Board.

discretion to select among policies ranging from strict compliance with the five day objection rule, to consideration of objections no matter when they may be filed. *See NLRB v. Pincus Brothers, Inc.—Maxwell*, 620 F.2d 367, 378 (3d Cir. 1980) (Garth, J., concurring). Once the Board adopts a particular policy, however, its original discretion is displaced. *See id.* at 379. It is bound to adhere to the policy it announces, until such time as the policy is modified or abandoned. *See, e. g., id.* at 379; *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Geiger v. Brown*, 419 F.2d 714 (D.C. Cir. 1969) (per curiam); *Sangamon Valley Television Corp. v. United States*, 269 F.2d 221 (D.C. Cir. 1959).

The Board has made a clear policy choice in this field, resolving the tension between the need for speedy resolution of election contests and a concern for substantive justice in this delicate area of election disputes. Although it had and has the power to do so, it has not chosen a policy of enforcing strict compliance with its five day objection rule. Rather, it has repeatedly declared a contrary policy. It has held that, once a timely objection has been filed, the regional directors are *required* to consider all evidence of improper conduct that is either brought to their attention or that they discover themselves in the course of their investigations. This is so even when that improper conduct is the subject only of an objection filed out of time, or is not the subject of any objection at all. The Board has held that the regional directors have no discretion to decline to consider such evidence. The Board summarized this policy in its recent opinion in *American Safety Equipment Corp.*, 234 NLRB 501 (1978):

We think the circumstances of the case afford an appropriate vehicle for restating and reaffirming our longstanding policy which permits a Regional Director to set aside an election based on conduct which he has discovered during his investigation, even though that particular conduct has not been the subject of a specific objection.

The Board has long held the Regional Director is not required to, nor can he properly, ignore evidence relevant to the conduct of the election simply because the Union may not have specifically mentioned such conduct in its objections. Thus while it is the burden of the parties initially to investigate and to complain if they believe that objectionable conduct has occurred, once the Board's investigative machinery has been set in motion by timely filed objections, it is within the Regional Director's discretion to determine the scope of the investigation. In the exercise of the discretion he may confine the investigation to matters specifically complained of in the objections or intimately connected thereto. On the other hand, he may view the filed objections as having cast suspicion over the entire election process, thereby justifying his independent investigation of matters not specifically contained in the objections. *However, no matter which approach the Regional Director chooses, if he receives or discovers evidence during his investigation that shows that the election has been tainted, he has no discretion to ignore such evidence and it is reversible error if he fails to set aside the election.*

234 NLRB at 501 (footnotes, citations, internal quotations and ellipsis omitted; emphasis added).[4]

---

**4.** The Board attempts to justify its refusal to consider Campbell's late objection by citing us to a number of cases in which it claims to have followed a similar course. One of these, *Heritage Nursing Center, Inc.*, 207 NLRB 826 (1973), is plainly distinguishable. There, the company did not file its objections until seven months after the election. These objections were thus filed after the regional director's investigation

had been completed, after his report was filed, after the Board had adopted the regional director's recommendations, after the union had requested bargaining, and after the Board's general counsel had filed a complaint charging the company with an unlawful refusal to bargain. A refusal to consider objections filed at this time, of course, does not conflict with the policy expressed in *American Safety Equip-*

Here, the regional director and the Board plainly violated the Board's own policy. Under Board precedent, and on this record, Campbell was entitled to have its out-of-time objection given full consideration. Since the Board did not give Campbell the consideration and investigation that it deserved, we will not enforce its order.

### IV.

We hold that the Board properly rejected, without a hearing, Campbell's initial objection charging electioneering by a rank and file employee. We hold further that the Board erred in refusing to consider and investigate Campbell's second objection, which was submitted shortly after the expiration of the five day objection period. We will therefore deny enforcement of the Board's bargaining order, and remand the cause to the Board for proceedings consistent with this opinion. Costs will be taxed against the Board.

---

*ment* that the regional director must consider all evidence of improprieties that he discovers or that are brought to his attention *in the course of his investigation* where, as here, an initial objection was timely filed.

A second case relied on by the Board, *Jason/Empire, Inc.,* 212 NLRB 137 (1974), *enf'd per curiam,* 518 F.2d 7 (10th Cir. 1975), while not involving a delay as long as that in *Heritage Nursing Center,* also reveals objections filed after the regional director's report was completed. Therefore, it too does not conflict with *American Safety Equipment.*

The last case, *Van Tran Electric Corp.,* 187 NLRB 632 (1970), *enf'd per curiam,* 449 F.2d 774 (6th Cir. 1971), is somewhat ambiguous. The untimely objections were filed before the regional director's final certification of the union, but it appears that the regional director had undertaken no investigation of objectionable conduct at all. Thus, it cannot be said that the objections were filed before the director had completed his investigation, or that the

Board's investigative machinery had properly been triggered by a timely filed objection. So viewed, the refusal to investigate here does not conflict with *American Safety Equipment.*

Even assuming, however, that *Van Tran Electric,* or any other cases, reflect departures from *American Safety Equipment,* such cases cannot support the regional director's refusal to investigate Campbell's late objections here. That the Board on past occasions may have unjustifiably departed from its announced policy in no way supports a present right to do so. The Board had original discretion to choose between the *American Safety Equipment* approach and a policy of enforcing strict compliance with the five day rule. Having adopted the policy reaffirmed in *American Safety Equipment,* the Board retains the discretion to change its mind expressly and substitute a strict compliance policy. But, until changed, the Board is bound to adhere to the policies it announces, and it is our duty to ensure that it does so.