ANCHOR INNS, INC., d/b/a Anchor Inn Hotel of St. Croix, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 80–2219.

United States Court of Appeals, Third Circuit.

Argued Dec. 12, 1980.
Decided March 20, 1981.

Adriane J. Dudley (argued), Dudley, Martin & Dudley, Charlotte Amalie, St. Thomas, U. S. V. I., for petitioner Anchor Inns, Inc. d/b/a Anchor Inn Hotel of St. Croix.

Elliott Moore (argued), Deputy Associate Gen. Counsel, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Before SEITZ, Chief Judge, GIBBONS and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

On July 18, 1980, the National Labor Relations Board ("NLRB" or "Board") entered an order finding Anchor Inns, Inc. ("Company" or "Employer") to have violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1) & (5) (1976), by refusing to bargain with the Gastronomical Workers Union of Puerto Rico, Local 610, Hotel and Restaurant Employees and Bartenders International Union, AFL–CIO ("Union"). The Board ordered the Company to cease and desist in its violations, to post appropriate notices, and to recognize and bargain with the Union upon request. Anchor Inns filed this petition for review under 29 U.S.C. § 160(f) (1976); the Board cross-applied for enforcement pursuant to 29 U.S.C. § 160(e) (1976).

Although Anchor Inns' petition formally seeks review of the unfair labor practice proceedings, it is not disputed that the Company refused to bargain with the Union. The Company's complaints are directed to events surrounding the representation election—alleged coercive activity by the Union, its agents, and adherents, and the Board's failure to deal appropriately with that activity. Because Congress has not provided for direct judicial review of Board representation proceedings, the Employer was compelled to expose itself to unfair labor practice charges in order to gain access to this court. The validity of the unfair labor practice charges depends on the legality of the Union's certification. Therefore, we may address the Company's claims concerning the representation proceedings in our treatment of its section 10(f) petition. *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941);

*NLRB v. Sun Drug Co.*, 359 F.2d 408 (3d Cir. 1966). We deny enforcement and remand for an evidentiary hearing.

## I.

Anchor Inns, Inc. operates the Anchor Inn Hotel in St. Croix, United States Virgin Islands. On October 27, 1978, the Union filed a representation petition with the Board, requesting certification as the exclusive bargaining agent of all service and maintenance employees at the Company's St. Croix hotel, excluding from the proposed bargaining unit office clerical employees, professional employees, guards and supervisors. Although the Company and the Union disagreed about the supervisory status of one employee, Hippolyte Victor, a consent election was held on December 15, 1978. Victor served as the Union's observer at the election. Six votes were cast: four in favor of the Union, one against the Union, and Victor's, which was challenged and therefore not counted. Because Victor's vote was not determinative of the election, the challenge was not resolved.

On December 21, 1978, the Company filed objections to the election, claiming that certain Union proponents, notably Victor, had threatened or coerced its employees and thereby disrupted the free and fair atmosphere of the election. The objections were accompanied by an affidavit of Company owner Lon B. Southerland, through which Southerland related conversations between himself and three Anchor Inn employees. Employee Albert Hughes informed Southerland that Victor had told Hughes and other employees that if they did not vote for the Union, they would lose their jobs within 30 days. Employees Hermie Joseph and Lucille Dailey, when separately volunteering to Southerland that they preferred not to have a union despite Victor's pro-Union activities, "check[ed] to see that no one was listening and appear[ed] frightened and apprehensive."

The Board's Regional Director investigated the Company's objection and, without having held a hearing, issued his report and recommendations on March 20, 1979. In his report, the Regional Director concluded, on the basis of his interview with Victor, that Victor had told Hughes that if the Union won the election, Hughes would have to join the Union or lose his job within 30 days. This was inaccurate, the Regional Director found, because it omitted reference to the necessity for successful negotiation of a union security clause before conditioning employment on union membership. He further held that such a "statement made to one employee cannot be said to have interfered with free and unfettered choice by employees in the election." The Regional Director also noted that no evidence had been adduced or discovered that would indicate that Victor was an agent or employee of the Union. As to Southerland's reference to his conversation with employees Joseph and Dailey, the Regional Director found it unpersuasive, deeming it to be an offer of proof that the election results did not reflect the previously expressed views of the voters. For these reasons, the Regional Director recommended that the objection be overruled and the Union certified as the bargaining representative of the Company's employees in an appropriate unit.

The Company thereupon filed exceptions to the Regional Director's report. In essence, the Company urged that the Regional Director should at least have conducted a hearing on the objections tendered to the election. This was especially appropriate, the Employer argued, with respect to Victor's statement to Hughes, which Hughes had interpreted as a threatened loss of employment if he did not vote for the Union. The discrepancy between the evidence offered in support of the objection and the evidence discovered by the Regional Director's investigation demanded, it was urged, a hearing to determine the true nature of Victor's remarks. Next, the Company complained that it should not have been held responsible for failing to produce evidence of Victor's agency status with the

Union. The strictures of section 8(a)(1),[1] it was argued, precluded the Employer from engaging in the type of investigation that would produce competent evidence of an agency relationship. Further, the Company claimed that even if Victor were not a Union agent, a hearing was required to determine Victor's supervisory status, for if he were found to be a supervisor, as the Company had consistently contended throughout the representation proceedings, his activities on behalf of the Union irreparably tainted the election process. Finally, the Company urged that the actions of Joseph and Dailey, in communicating with Southerland, indicated that more than one employee had been the target of Victor's "threats." Therefore, even absent Union agency or supervisory status, the widespread nature of Victor's coercive conduct raised a significant possibility that "a free expression of choice of representatives [was] impossible."

The Board adopted the Regional Director's recommendations and certified the Union on May 8, 1979. The Board noted, however, that it was overruling the objection solely on the ground that the evidence presented by the Company did not establish that Victor was a union agent. Absent such agency, the Board held, a statement such as the one ascribed to Victor by the Regional Director was not grounds for setting aside an election.

On August 10, 1979, the Company filed a motion for reconsideration with the Board, claiming that "new and previously unavailable evidence" had been discovered which established that the employees had been unlawfully coerced in their choice of a bargaining representative and that the election should have been set aside. Attached to the motion for reconsideration were two affidavits. In one affidavit, employee Catherine Wade stated that Victor was the only employee with whom Ralph Mandrew, the Union organizer, had been in contact,

and that Victor had advised all the hotel maids that he was the Union representative. The other affidavit, executed by Hermie Joseph, stated that although Victor had threatened her with physical harm and lies which would cause her to lose her job, she had not informed the Regional Director's investigator of the threats. She did not report this, she claimed, because Victor told her not to and she was "afraid" of him. Joseph also stated that Lucille Dailey had heard Victor threaten Albert Hughes because Hughes would not support the Union. The Board denied the Company's motion for reconsideration due to an "insufficient showing that the proffered evidence was previously unavailable and that, if considered, would require a different result."

Having exhausted its ability to initiate review of the representation proceedings, the Company thereupon refused to bargain with the Union. An unfair labor practice charge was then lodged against the Company, a complaint issued, and, on the General Counsel's motion, summary judgment was entered against the Company on July 18, 1980. We are now asked to review that judgment.

II.

The Company's arguments in this court are identical to those raised before the Board in the post-election proceedings. It insists that the evidence presented in the affidavits of Southerland, Wade, and Joseph was sufficient to warrant the setting aside of the election or, failing that, to require an evidentiary hearing on the factual issues raised. We believe the latter contention is meritorious.

A.

Congress has entrusted to the NLRB sole responsibility for conducting election proceedings to select collective bargaining representatives for workers. 29 U.S.C. § 159 (1976). Courts, sharing only indirectly in

---

1. Section 8(a)(1) provides that "[i]t shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7 of the Act]." 29 U.S.C. § 158(a)(1) (1976).

Questioning employees about union sympathies or involvement may, under certain circumstances, constitute a violation of this section. See Hedstrom Co. v. NLRB, 629 F.2d 305, 314 (3d Cir. 1980) (en banc).

the responsibility for monitoring that election process, have afforded the Board a "wide degree of discretion" in the conduct of the election and the attendant proceedings. *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); *NLRB v. El-Ge Potato Chip Co.*, 427 F.2d 903, 906 (3d Cir. 1970), *cert. denied*, 401 U.S. 909, 91 S.Ct. 869, 27 L.Ed.2d 807 (1971). The administrative regulations provide that when a party objecting to an election raises "substantial and material factual issues" before the Regional Director or the Board, either may direct an evidentiary hearing. 29 C.F.R. § 102.69(d) & (f) (1980). It is now well established, however, that the courts will insist on an evidentiary hearing when a party's objection raises substantial and material issues of fact. *NLRB v. Campbell Products Department*, 623 F.2d 876, 879 (3d Cir. 1980).[2] In *Campbell Products*, this court stated:

> A party is entitled to an evidentiary hearing where its objection raises substantial and material issues of fact.... As a corollary, no hearing is necessary where the Board assumes the truth of the party's contentions, and then rules as a matter of law that, assuming the facts alleged, the challenged conduct does not warrant setting aside the election.

*Id.* (citing *NLRB v. Sun Drug Co.*, 359 F.2d at 414). In *Campbell Products*, the employer had alleged that a union supporter had been electioneering during the course of balloting. The Board assumed the allegation to be true and, relying on the traditional distinction drawn between activities undertaken by the parties to an election and those undertaken by rank and file employees, overruled the objection. This court upheld that action.

In order to obtain an evidentiary hearing, the objector's proffer of evidence must prima facie warrant setting aside the election. The proffer may not be conclusory or vague; it must point to specific events and specific people. On the other hand, an evidentiary hearing is not required when, if all the evidence proffered by the objecting party is accepted as true, no ground is produced which would warrant setting aside the election. *Campbell Products, supra.* In *NLRB v. Claxton Manufacturing Co.*, 613 F.2d 1364 (5th Cir. 1980), the Board, as in the case at bar, apparently believed that it was not required to decide whether the objector's affidavits raised substantial and material issues that prima facie warranted setting aside the election. Rather, the Board concluded that it might await the results of the regional director's ex parte investigation and credibility determinations before deciding whether a hearing might be warranted. The Fifth Circuit rejected such a procedure and declined to enforce the bargaining order. *Id.* at 1373. We find the Fifth Circuit's approach persuasive in this case. It would of course serve no useful purpose to require the Board to hold hearings when the evidence proffered will not affect the validity of the election. However, in order to give the objecting party the full benefit of its statutory and constitutional hearing rights it is necessary that at some point the Regional Director or the Board, in determining the substantiality and materiality of the factual issues raised by an objection, assume that the allegations contained in that objection are true. This was not done in the case at bar. Had the allegations been taken as true, they may have warranted setting aside the election.

After the election, the Company timely filed an objection to claimed "threats by agents or employees of the [Union] to employees of Anchor Inn that if they did not vote for the Union they would lose their jobs," which allegedly affected the outcome of the election. In a supporting affidavit, Southerland, the Company's principal, stated:

2. Other courts of appeals have adopted the same rule. *See NLRB v. Claxton Mfg. Co.*, 613 F.2d 1364, 1365 (5th Cir. 1980); *Methodist Home v. NLRB*, 596 F.2d 1173, 1178 (4th Cir. 1979); *NLRB v. S. Prawer & Co.*, 584 F.2d 1099, 1102 (1st Cir. 1978); *NLRB v. Bristol Spring Mfg. Co.*, 579 F.2d 704, 706–07 (2d Cir. 1978); *NLRB v. Medical Ancillary Serv., Inc.*, 478 F.2d 96, 98 (6th Cir. 1973); *Sonoco Prods. Co. v. NLRB*, 399 F.2d 835, 839 (9th Cir. 1968); *NLRB v. National Survey Serv., Inc.*, 361 F.2d 199, 206 (7th Cir. 1966).

[O]n December 12, 1978, . . . a bargaining unit employee of Anchor Inn Hotel [Albert Hughes] stated to me that certain statements had been made to this Individual and to other employees by employee representatives of [the Union] that if the employees did not vote for the Union they would lose their jobs within 30 days.

The Regional Director investigated the objection and, in his report and recommendation, observed:

The investigation revealed that approximately 4 days prior to the election herein, [Hippolyte Victor] engaged in a conversation with [Albert Hughes] during which [Victor] stated his belief that the [Union] was going to win the election and if the [Union] did so, [Hughes] would have to join [the Union] within 30 days or lose his job.

Because the Regional Director believed this statement to have been made to only one employee, Hughes, by one not shown to be a Union agent, he concluded that it had no effect on the employees' exercise of free choice in the election. Accordingly, he chose not to hold an evidentiary hearing and recommended to the Board that the Employer's objection be overruled. The evidence gathered in the Regional Director's investigation does not appear in this record.

A reading of the Regional Director's report demonstrates an inadequate treatment of the Company's objection to the election. As noted above, the allegations of the objecting party must be taken as true in reaching a determination whether or not "substantial and material factual issues" exist. In his treatment of Anchor Inns' objection, the Regional Director substituted "facts" gleaned from his ex parte investigation for the Company's allegations. Anchor Inns was entitled to considered evaluation of the legal effect of Victor's threats as recounted by Southerland, not merely as explained away by Victor himself. However, the Regional Director purposely reserved judgment on the question whether a hearing was justified until after obtaining Victor's statement. Thus, for all that is revealed by this record, Anchor Inns may

have established the right to a hearing only to be deprived thereof by means of an ex parte administrative investigation. Had this deprivation occurred, the Board's order would not merit enforcement. "Once the right to a hearing is established, the investigation is not a substitute for it." *NLRB v. Claxton Manufacturing Co.*, 613 F.2d at 1366.

We need not actually decide what criteria are to be used by the Regional Director and the Board in determining whether issues raised by an objection are "substantial." However, we make the following observations in connection with certain arguments advanced on behalf of the Board in this case. In his brief to this court, General Counsel argues that Southerland's affidavit was properly disregarded because of its hearsay nature. Although we can envision situations in which the inadmissibility of evidence offered in support of an objection would render the issues raised not "substantial," *see, e. g.,* note 3 *infra,* we reject General Counsel's argument in this case for two reasons. First, neither the Regional Director nor the Board advanced this as a reason for ignoring the Employer's allegations and we " 'may not accept appellate counsel's *post hoc* rationalizations for agency action. . . .' " *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962)). Second, although some Board proceedings are to be conducted as nearly as practicable according to the Federal Rules of Evidence, 29 U.S.C. § 160(b), an outright rejection of a hearsay affidavit in the context of an objection to an election is improper. As evidenced by the facts of this case, there are a variety of circumstances that would render the production of firsthand accounts of unlawful activity extremely difficult, if not impossible.

Here, the Employer alleges that Victor's threats to Anchor Inn employees were so persuasive and effective that one employee lied to the Regional Director's agent during

the investigation of the Company's objection. If that allegation is correct, it is not surprising that the Company was unable to obtain signed and sworn affidavits detailing instances of alleged unlawful Union activity.[3] Similarly, unions that lose representation elections may find themselves with a decided lack of access to employees during the immediate post-election period in which objections must be filed. It is quite possible that a union seeking to vacate an election will be forced to rely on hearsay assertions by its organizers that the employer unlawfully coerced rank and file employees, the latter being unwilling to put their jobs in jeopardy for a union that has failed in its organization attempt.

■ The Board may properly insist on competent evidence at an evidentiary hearing, when its subpoena power is placed at the parties' disposal. 29 C.F.R. § 102.66(c) (1980). However, when material factual issues are raised in an affidavit alleging specific instances of unlawful conduct by a party to an election, the allegations giving rise to those issues may not be disregarded, simply because of their hearsay nature, in favor of evidence gathered during an ex parte administrative investigation. Ignoring the Company's allegations was especially inappropriate because it appears that the Regional Director's investigation corroborated Southerland's assertion that Victor had spoken with Hughes about the Union's ability to cause him to lose his job.

The Board repeated the Regional Director's error when it adopted his recommendation to overrule the objection to the election and certify the Union. Although the Board overruled the objection on more narrow grounds than those on which the Regional Director predicated his recommendation, the Board relied on that version of the facts found in the ex parte administrative investigation. The Board stated:

> The sole objection is that approximately 4 days prior to the election one of the Employer's employees told another employee that *if the Petitioner [Union] won the election, the employee would have to join the Petitioner within 30 days or lose his job....* We find it unnecessary to reach the question of whether such a statement, when made by an agent of a labor organization, constitutes conduct which warrants setting aside an election. Here, the evidence fails to support the Employer's contention that the employee who allegedly made the statement was an agent of the Petitioner. While we adopt the Regional Director's recommendation that the objection be overruled, we do so solely because *the statement in question,* when made by one who is not an agent of either a labor organization or an employer, is not so aggravated as to create a general atmosphere of fear and reprisal and, thereby, render a free expression of choice impossible. See *Central Photocolor Company, Inc.,* 195 NLRB 839 (1972).

*Anchor Inns, Inc. v. Gastronomical Workers Union of Puerto Rico, Local 610,* No. 24–2C–6207 (NLRB Decision and Certification of Representative, May 8, 1979) (emphasis added). That the Board's decision rested on its estimation of the effect of Victor's statement as described by the Regional Director is evidenced by its reliance on *Central Photocolor.* Among other alleged instances of

3. General Counsel argues that the Company should at least have made " 'some showing of reasonable effort and failure to obtain evidence, or a convincing demonstration that such efforts would necessarily involve risk of illegal action or inequitable or insuperable difficulty.' " Brief of NLRB at 7, (citing *NLRB v. National Survey Serv.,* 361 F.2d 199, 208 (7th Cir. 1966); *NLRB v. Hepa Corp.,* 597 F.2d 166 (9th Cir. 1979)). Even if this correctly represented the law of this circuit, neither case relied upon by General Counsel convinces us that such a showing was necessary in this case. In *National Survey,* the employer supported its allegation of union electioneering with assertions that union agents " 'were observed in conversation with' " employees in the vicinity of the polls and that " '[i]t is apparent that the Petitioner was electioneering....' " 361 F.2d at 208. This is not hearsay, it is simply unfounded speculation and, thus, the court's treatment of it is not relevant to the present inquiry. In *Hepa Corp.,* the affidavit revealed fifth-hand hearsay which is only probative in rare situations and certainly less worthy of reliance than the information contained in Southerland's affidavit.

Union misconduct in that case were "statements that if the Union won the election it would pressure employees who voted against it to join the Union or lose their jobs." 195 N.L.R.B. at 839. The Board held that such statements, when not attributable to union agents or employees, are not sufficiently aggravated to upset the election.

█ The Company's objection entitled it to a fair determination of whether or not a hearing was warranted. The Board's failure to evaluate properly that objection deprived the Company of such a fair determination. However, because we agree with the Company that an evidentiary hearing should have been conducted with respect to the allegations contained in the motion for reconsideration, re-evaluation of the objection will be necessary only if the validity of the election is upheld after the hearing on the motion for reconsideration is concluded.

### B.

Approximately three months after the Union was certified, the Company filed a motion requesting the Board to reconsider its decision. That motion was accompanied by two affidavits: Catherine Wade's, asserting facts that would reasonably support an inference of Union agency on the part of Hippolyte Victor, and Hermie Joseph's, claiming among other things that she had lied to the Regional Director's investigator in early 1979, because Victor had threatened her with harm if she told the investigator the truth. The Board denied the Company's motion on the alternative grounds that there was not a sufficient showing of previous unavailability of the offered evidence and that the new evidence, even if believed, did not appear to warrant setting the election aside.

█ We can find no reasonable basis for the Board's conclusion that Hermie Joseph's affidavit did not contain "previously unavailable" evidence. It certainly was not available until the events it detailed had occurred, which was after the objection to the election had been filed. It is conceivable that the Board found a previous opportunity for the Employer to present this evidence when it filed its exception to the Regional Director's report and recommendation to the Board. However, the allegations themselves provided a compelling justification for their delayed submission—the witness feared for her personal safety. The substance of the charges demanded caution against casual dismissal: allegations of perjury during the course of an official investigation always deserve careful attention. In this case, the alleged perjury took on added significance because the evidence gathered by the investigator to whom Ms. Joseph lied formed the basis for the Regional Director's recommendation that the Company's objection to the election be overruled. In view of the gravity of the allegations, we conclude that the Board abused its discretion in refusing to consider them because of their delayed submission.

█ We also find ourselves unable to agree with the Board that these allegations, if true, would not affect the validity of the election. *See generally Zeiglers Refuse Collectors, Inc. v. NLRB*, 639 F.2d 1000 (3d Cir. 1981). In part, we decline to accept the Board's holding to this effect because that holding—like the one overruling the objection to the election—is premised on the Regional Director's rejection of Southerland's account of the Victor-Hughes conversation.

Further, the Board's rejection of the Company's "previously unavailable" evidence as immaterial is wholly incompatible with its professed intent "to provide a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees." *General Shoe Corp.*, 77 N.L.R.B. 124, 127 (1948). *See Zeiglers Refuse Collectors, Inc. v. NLRB*, 639 F.2d at 1004–1005. In establishing that goal, the Board charged itself with the "duty to establish those conditions [and the] duty to determine whether they have been fulfilled." *General Shoe Corp.*, 77 N.L.R.B. at 127. Hermie Joseph's affidavit claims that Hippolyte Victor had threatened that "somebody" would get hurt if the Union was not voted in, that Victor and other hotel maids had threatened to lie to the Employer to cause Joseph to be fired, and

that Victor had threatened harm to Albert Hughes both to his face and to the maids. This is certainly material because the Regional Director had based his recommendation on a finding that Victor had made improper remarks to only one employee.

In a proposed bargaining unit of five or six employees, campaign tactics directed at only two or three employees may still affect the outcome of the election. We believe that there is a substantial likelihood that such a disruption of the electoral process occurred in the case at bar. We will therefore remand the case to the Board for an evidentiary hearing on the allegations contained in the Company's motion for reconsideration.

### III.

Accordingly, the Company's petition for review will be granted. The cross-application for enforcement of the order of the NLRB will be denied and the case remanded for an evidentiary hearing and for further proceedings not inconsistent with this opinion.

Costs taxed against respondent.