**TRIMM ASSOCIATES, INC.,**
Petitioner No. 02–4194

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent**

**National Labor Relations Board,**
Petitioner No. 02–4472

v.

**Trimm Associates, Inc., Respondent.**

No. 02–4194, 02–4472.

United States Court of Appeals, Third Circuit.

Argued July 31, 2003.

Filed Dec. 3, 2003.

Brian P. Kirby, [Argued], Gallagher, Schoenfeld, Surkin & Chupein, Media, for Petitioner/Cross Respondent Trimm Associates, Inc.

Aileen A. Armstrong, Julie B. Broido, Kathleen E. Lyon, [Argued], National Labor Relations Board, Washington, for Respondent/Cross Petitioner National Labor Relations Board.

Before SCIRICA, Chief Judge,
RENDELL and AMBRO, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

This case arises out of a union representation election at Trimm Associates, Inc. in September of 2001, in which Trimm's employees voted four votes to three in favor of representation. Trimm contends that the National Labor Relations Board ("Board") should have set aside the election because of improper electioneering just prior to and during the election, in violation of the National Labor Relations Act ("Act"), and accordingly challenges the Board's certification of Glaziers Local 252 ("the Union") as the collective bargaining representative for its employees. Trimm now petitions for review of the Board's order directing it to bargain with the Union, and the Board, in turn, seeks enforcement of its order. We agree that the Board abused its discretion by resolving certain substantial and material factual issues without an evidentiary hearing. We will, therefore, grant Trimm's petition for review, deny the Board's cross-application for enforcement, and remand.

## I.

On August 6, 2001, the Union filed a petition seeking to represent the employees of Trimm, a small glass fabrication and installation company located in Media, Pennsylvania. A secret ballot election was held the following month. Ten individuals

voted in the election, seven of whom were the then-current employees whose votes were ultimately tallied. The remaining three – Eric Boerckel, Joe Boerckel, and Gerry Gebhart – were former employees. They had recently been let go by the company, but, because of grievances and the possibility that their discharges might have constituted unfair labor practices, they were permitted to vote. Their votes were sealed pending resolution of the unfair labor practice charge and so were not counted.

Of the seven eligible voters, four voted for the Union and three voted against. Trimm filed timely objections, alleging a violation of the Board's longstanding rule, first announced in *Milchem, Inc.*, 170 N.L.R.B. 362 (1968), generally prohibiting prolonged conversations between union or employer agents and employees waiting to vote. According to Trimm, two of the former employees, brothers Eric and Joe Boerckel, were Union agents and had engaged in prolonged pro-union conversations with Trimm employees waiting to cast their ballots. Trimm therefore requested that the results of the election be set aside. Alternatively, it sought an evidentiary hearing.

In support of its objections, Trimm presented three affidavits – two by Trimm employees who were eligible voters, and one by Trimm's president – along with supporting materials. The affidavits attested to the fact that the Boerckels were union "organizers" in the shop, and described the following events from the morning of the election.

Shortly before the election was to begin, the Boerckel brothers met briefly with representatives of the Union in Trimm's parking lot. When the meeting on Trimm's premises was broken up by Trimm's presi-

dent, Clay Jordan, the men crossed the street and continued their discussions.

The balloting took place inside Trimm's shop, near a large glass table. Individuals waiting to vote, including Trimm's then-current employees as well as the Boerckel brothers, congregated near another glass table in the shop, approximately 20–30 feet from the polling.

Just prior to the opening of the polls and during the balloting, the Boerckel brothers, who had both obtained unionized positions elsewhere, discussed with the other voters the union job status they enjoyed since being discharged by Trimm. Joe Boerckel displayed a paycheck from his new job, for either $970.00 or $770.00, which he represented as his net pay after taxes and benefits. He also stated that the Union had guaranteed him jobs on upcoming projects at the Philadelphia Convention Center and the Philadelphia International Airport. Eric Boerckel stated that the Union had secured employment for him in New Jersey, and that he earned more than his brother because of his longer commute.

After conducting an investigation, which in large part confirmed that the activity asserted in Trimm's affidavits took place, the Regional Director recommended that Trimm's objections be overruled and the results of the election certified, reasoning that Trimm's *Milchem* objection that the election should be set aside based on improper electioneering by the Union was meritless because there was no evidence that the Boerckels were Union agents. Trimm sought reconsideration, and offered as proof of agency a copy of the Union's then-pending (but later withdrawn) unfair labor practice charge against Trimm based on the discharge of the Boerckel brothers.[1]

---

1. With respect to the Boerckels, because the Union withdrew the unfair labor practice

The charge asserted that the Boerckels were the Union's "lead organizers" at the shop. The request for reconsideration was denied.

Trimm then filed exceptions to the Regional Director's Report, requesting that the Board set aside the election or, in the alternative, direct an evidentiary hearing for the presentation and consideration of testimony and evidence relevant to its objections. Trimm reiterated the arguments it had presented to the Regional Director, and, in addition, argued that the Boerckels' conduct was sufficiently egregious to warrant setting aside the election even assuming that the Boerckels were not agents of a party to the election. On March 5, 2002, the Board, without analysis, adopted the Regional Director's report and certified the Union as the employees' collective bargaining representative. Trimm's request for Board reconsideration was denied.

To obtain judicial review of the circumstances surrounding the representation election, Trimm refused to bargain with the Union, and in June of 2002, the Union filed an unfair labor practice charge.[2] The Board agreed with the Union that Trimm had wrongfully refused to bargain with the employees' collective bargaining representative, in violation of the Act, and ordered Trimm to cease and desist from its refusal to bargain. On November 13, 2002, Trimm filed this Petition for Review, and on December 17, 2002, the Board filed a Cross–Application for Enforcement of its order.

The Board had jurisdiction over this unfair labor practice action pursuant to § 10(a) of the Act, and we have jurisdiction under § 10(e) and § 10(f). *See* 29 U.S.C. §§ 160(a), (e), (f). Because the Board's unfair labor practice decision is based in part on issues decided in the underlying representation election proceeding, we may address those issues in determining whether we will enforce the Board's unfair labor practice order. *See* 29 U.S.C. § 159(d); *NLRB v. J–Wood/A Tappan Div.*, 720 F.2d 309 (3d Cir.1983); *Anchor Inns, Inc. v. NLRB*, 644 F.2d 292, 293 (3d Cir.1981).

 Generally, our standard of review of orders of the Board is highly deferential. We have plenary review over questions of law and the Board's application of legal precepts, but defer to the Board's reasonable interpretation of the Act. *Spectacor Mgmt. Group v. NLRB*, 320 F.3d 385, 390 (3d Cir.2003). The Board " 'need not show its construction is the *best* way to read the statute,' " so long as its construction is a reasonable one. *Id.* (quoting *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 409, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996)); *see also, e.g., Allegheny Ludlum Corp. v. NLRB*, 301 F.3d 167, 174–75 (3d Cir.2002). We accept the Board's factual findings if they are supported by substantial evidence on the record as a whole. *See, e.g., Spectacor*, 320 F.3d at 390; *see also* 29 U.S.C. § 160(e). The Board's regulations require it to conduct a hearing where a party has raised a "substantial and material factual issue." 29 C.F.R. §§ 102.69(d), (f). The Board's refusal to conduct an evidentiary hearing is reviewed

charge, the Regional Director found that their votes were ineligible. The Regional Director further found that Gebhart was not eligible to vote because no unfair labor practice charge was ever filed regarding his discharge.

**2.** As certification orders are not final, appealable orders, Trimm had to expose itself to an unfair labor practice charge to challenge the validity of the election in the Court of Appeals. *See, e.g., St. Margaret Mem'l Hosp. v. NLRB*, 991 F.2d 1146, 1151 n. 5 (3d Cir. 1993).

for abuse of discretion. *St. Margaret Mem'l Hosp. v. NLRB,* 991 F.2d 1146, 1152 (3d Cir.1993).

## II.

Trimm's objections to the representation election present three issues for our consideration. First, whether the Boerckels' conduct during the election so impaired the free choice of the eligible voters as to require that the election be set aside, even if they should be found to not be Union agents, but, rather, just third-parties. Second, whether the Boerckels were in fact Union agents, which would render the electioneering improper and require the setting aside of the election. And third, whether the Board abused its discretion by not holding a hearing on Trimm's objections, particularly with regard to the question of the Boerckels' agency status.

While the evidence currently in the record is insufficient to warrant an outright reversal of the Board's ruling with respect to the first two issues, we agree with Trimm that it should have been given the opportunity to explore these issues further by way of an evidentiary hearing. The Board's regulations provide for a hearing where a party has raised a "substantial and material factual issue." 29 C.F.R. §§ 102.69(d), (f). For the reasons that follow, we believe that the standard has been met in this case.[3]

■ Under our case law, in order to obtain an evidentiary hearing a party must make a proffer of evidence that raises a substantial and material issue of fact that, if resolved in the party's favor, would warrant setting aside the election. *See St. Margaret,* 991 F.2d at 1152; *J–Wood,* 720 F.2d at 313–14; *Anchor Inns,* 644 F.2d at 296. The proffer of evidence "may not be conclusory or vague," but must "point to specific events and specific people." *Anchor Inns,* 644 F.2d at 296; *see also J–Wood,* 720 F.2d at 315 ("Under *Anchor Inns* a party objecting to a representation election must produce adequate evidence to show that there is substance to its allegations and not mere rhetoric."). On the other hand, if the proffer of evidence, even if taken as true, does not support a basis for setting aside the election, no evidentiary hearing is required. *See St. Margaret,* 991 F.2d at 1156; *J–Wood,* 720 F.2d at 313–314; *NLRB v. ARA Servs., Inc.,* 717 F.2d 57, 67 (3d Cir.1983); *Anchor Inns,* 644 F.2d at 296.

■ Although we ordinarily review the Board's decision not to grant an evidentiary hearing for an abuse of discretion, "[w]here elections are close, however," like this one, we have stated that "closer scrutiny of objections may be required of the Board." *St. Margaret,* 991 F.2d at 1156 (quotations omitted); *see also, e.g., NLRB v. Valley Bakery, Inc.,* 1 F.3d 769, 773 (9th Cir.1993) ("The need for a hearing is par-

---

**3.** While the focus of Trimm's arguments has been on the agency status of the Boerckels, we think it appropriate that, on remand, it have the opportunity to adduce evidence regarding the atmosphere of the election generally, which, based on the close quarters, relationships of the parties, and other non-tangibles, may have made it a coercive environment. The workers aligned with Trimm have not said they were coerced or inhibited, but those whose testimony would have been difficult to obtain may have been. See *J–Wood,* 720 F.2d at 315. And, if that evidence were developed at the hearing, the Board should be free to rule on this issue as well, just as it would have had a hearing been held in the first instance. Furthermore, this is consistent with our view that special scrutiny should be given to an election such as this where the result is as close as it can be, and the voting population small. *St. Margaret,* 991 F.2d at 1156. Accordingly, we will permit inquiry at the hearing to be held on remand into the aspects of the election that bear on its essential fairness.

ticularly great when the election is close."); *J–Wood*, 720 F.2d at 317 ("[T]he necessity for a hearing is particularly great when an election is close, for under such circumstances, 'even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election.' ") (quoting *NLRB v. Bristol Spring Mfg. Co.*, 579 F.2d 704, 707 (2d Cir.1978)); *NLRB v. Gooch Packing Co.*, 457 F.2d 361, 362 (5th Cir.1972) (per curiam) ("In close vote election situations the Board is required to particularly and carefully scrutinize charges which in other cases would constitute immaterial or insubstantial objections to the election and, when the existence of hard evidence of irregularities is supplied, a full hearing to get at the truth should be accorded.").

■ Trimm maintains that it has proffered "specific, detailed evidence" in support of its objections regarding the Boerckels' agency status. The company described the content and duration of the Boerckels' comments, identified the other employees involved, and presented significant evidence probative of the Boerckels' status as Union agents, including the Union's unfair labor practice charge and the pre-election meeting. If the Boerckels were indeed Union agents, the election must be set aside pursuant to the Board's decision in *Milchem, Inc.*, 170 N.L.R.B. 362 (1968), which announced a strict per se rule prohibiting agents of the employer or union from having prolonged conversations with voters in the polling place or waiting to cast their ballots, without regard to the nature or impact of the conversations. *Id.* at 362; *see also, e.g., Bio–Med. Applications of P.R., Inc.*, 269 N.L.R.B. 827, 829–30 (1984); *NLRB v. L & J Equip. Co., Inc.*, 745 F.2d 224, 235 (3d Cir.1984). We note that in its application of *Milchem* the Board follows the general maxim that " 'the law does not concern itself with tri-

fles,' " and accordingly has emphasized that *Milchem*'s strict rule does not extend to the mere "chance, isolated, innocuous comment or inquiry." *Milchem*, 170 N.L.R.B. at 363; *see also, e.g., Sawyer Lumber Co.*, 326 N.L.R.B. 1331, 1332–33 (1998). Here, however, there is no question that these conversations were prolonged.

According to Trimm, this is certainly adequate evidence of a substantial and material factual issue regarding agency status that, if resolved in its favor, would require that the election be set aside under *Milchem*, particularly since the election was so close. Trimm relies heavily on our decision in *NLRB v. J–Wood/A Tappan Division*, 720 F.2d 309 (3d Cir.1983), in which we carefully applied the principles stated above, and ultimately remanded to the Board after holding that the Board had abused its discretion by failing to conduct an evidentiary hearing on the issue of whether a certain employee was an agent of the union. Accordingly, it is worth examining this opinion in some detail.

In *J–Wood*, the union won the representation election by a vote of 32–31. *Id.* at 311. The company filed objections alleging that three employees (Eby, Eckley, and Ross), who were organizers for the union, had threatened two other employees. *Id.* The company offered to prove that the organizers were "known throughout the plant as agents of the Union," and "supplied the Regional Director with an article from a union publication expressly identifying Ross as a member of the 'plant committee' during the organizing drive." *Id.*

The Regional Director conducted an investigation, which "essentially confirmed the Company's allegations concerning the making of the statements." *Id.* All three employees, however, denied the threats and disputed that they were members of

an organizing committee. *Id.* at 312. Largely based on the conclusion that Eby, Eckley, and Ross were not union agents, the Regional Director rejected the company's request for a hearing and recommended that the election be certified. *Id.* The Regional Director was unconvinced by the union's post-election identification of Ross as a member of the plant committee, noting that Ross denied it and that serving on an organizing committee is at any rate insufficient to establish agency. *Id.* The Board agreed. *Id.*

On appeal, the company argued that an evidentiary hearing should have been held regarding the agency status of the employees. With respect to Eby and Eckley, however, the company had presented no evidence of agency, but had only "indicated a willingness to offer proof." *Id.* at 313. Because such an "offer" clearly does not satisfy the required specific and nonconclusory proffer of evidence, we could find no error in that part of the Board's conclusion. *Id.*

With regard to Ross, however, the company had produced specific, nonconclusory evidence – the union publication naming him as part of the successful plant committee. *Id.* at 312. We recognized the settled rule, noted above, that simply being part of an organizing campaign or committee is insufficient to establish agency, but found evidence of something more in the union's inclusion of a specific reference to Ross as a member of the plant committee in its published identification of those who had a significant role in the election victory. Our discussion on this point is instructive:

> The question before the Regional Director was not whether J–Wood had demonstrated Ross's agency status, but only whether the Company proffered adequate evidence to show that the agency question was a "substantial and material

factual issue" under *Anchor Inns* that, if resolved in its favor, would require setting the election aside. We believe that evidence of the Union's post-election publication of Ross's membership in the organizing plant committee was a relevant and highly probative item of evidence of agency status that warranted an evidentiary hearing, especially when the election results depended upon only one vote.

Under *Anchor Inns* a party objecting to a representation election must produce adequate evidence to show that there is substance to its allegations and not mere rhetoric. But none of our cases contemplate that an employer is required to present sufficient evidence to establish that the objections must be sustained before it can obtain an evidentiary hearing. The whole purpose for the hearing is to inquire into the allegations to determine whether they are meritorious. . . .

. . . . [I]t is unreasonable to expect the employer to document its objections with the kind of evidence that realistically could be uncovered only by subpoena and an adversarial hearing. All that *Anchor Inns* requires is that the "objector's proffer of evidence must prima facie warrant setting aside the election" and may not be "conclusory" or "vague" but must "point to specific events and specific people." J–Wood met this standard by naming the specific person who made the threatening statements and identifying the employee to whom they were made, facts confirmed by the Regional Director's investigation, and by producing the union article specifically identifying Ross as a member of the plant committee "involved in the drive." Thus, it was an abuse of discretion for the Regional Director not to hold a hearing to determine Ross's status.

*J–Wood,* 720 F.2d at 315–16 (quotations and citations omitted). *J–Wood* makes it clear that the question before the Board is not whether the objecting party can show that it will ultimately be able to prove its case, but only whether there has been a sufficient showing, given the inherent constraints on discovery, to raise a substantial and material issue of fact that, if resolved favorably to the objecting party, would warrant setting aside the election. *Id.*

We agree with Trimm that our decision here is controlled by *J–Wood,* and that the Board abused its discretion by not holding a hearing to determine the agency status of the Boerckels. Like the company in *J–Wood,* Trimm has made a nonconclusory proffer of evidence, including three affidavits and the Union's unfair labor practice charge, regarding " 'specific events and specific people,' " *J–Wood,* 720 F.2d at 313–14 (quoting *Anchor Inns,* 644 F.2d at 296), which clearly raises a substantial and material factual issue as to the agency status of the Boerckels. Indeed, Trimm's proffer of evidence is arguably stronger than the one we considered in *J–Wood.* There, the proffer consisted of a single piece of evidence, the union publication issued after the election. Here, the proffer consists of several relevant pieces of evidence, such as the Union's reference to the Boerckels as "our two lead organizers" in the unfair labor practice charge, the pre-election meeting between the Boerckels and Union representatives, and the employee affidavits which described the Boerckels as union "organizers."

This evidence raises serious questions. Did employees know of the Union's designation of the Boerckels as its "lead organizers"? How many employees witnessed the parking lot conversation between the Boerckels and Union representatives? The evidence, although insufficient to set aside the election outright, clearly raises

the issue of actual or apparent authority. Moreover, as noted, the resolution of the agency issue in this case could be dispositive; if the Boerckels were agents, the election must be set aside under *Milchem.* Finally, as in *J–Wood,* because of the closeness of the election, the Board was obligated to take particular care in evaluating whether Trimm's objections were potentially meritorious.

This case can be distinguished from those in which we have found no abuse of discretion in the Board's failure to conduct a hearing. *See, e.g., St. Margaret,* 991 F.2d at 1158; *ARA Servs.,* 717 F.2d at 67. In *ARA Services,* the union won the election 30–22, and the company filed objections, which, in part, relied on the contention that certain employees were union agents. 717 F.2d at 59–60. The company's proffer of evidence relating to agency, however, consisted merely of two unverified, handwritten statements by employees, one of which referred to two other employees as "pro-union spokesmen," and the other of which referred to a promise made by "several of the pro union girls," an assertion the employee later partially recanted. *Id.* at 59–62. The Regional Director's investigation disclosed no other evidence of agency, and, indeed, turned up additional evidence strongly suggesting that the individuals referenced were *not* union agents. *Id.* at 61–62. On such a weak showing by the company, and in a situation where the Union won by a relatively comfortable margin, we found that the company's proffer of evidence "add[ed] nothing" to the regional director's investigation, and thus that the Board's "decision to decide the certification question on the record made by the regional director [could not] be held to be an abuse of discretion." *Id.* at 67; *cf. NLRB v. Herbert Halperin Distrib. Corp.,* 826 F.2d 287, 291 n. 1 (4th Cir.1987) (noting that in our decision in *J–Wood* we "relied heavily on

the closeness of the vote," and distinguishing our ruling there from a case where the union "won by a large margin").

And, in our decision in *St. Margaret*, the company had asserted that three days before the election, which the union ultimately won by a vote of eleven to seven, the union made material misrepresentations to employees. 991 F.2d at 1149–50. The company made a substantial proffer of evidence and sought an evidentiary hearing. *Id.* at 1150–51, 1155. The Board, however, overruled the company's objections without a hearing, reasoning that under the rule it had announced in *Midland Nat'l Life Ins. Co.*, 263 N.L.R.B. 127, 133 (1982), an election could not be set aside solely on the basis of a party's misleading campaign statements, like those at issue in *St. Margaret*, 991 F.2d at 1151. On appeal, we agreed that the union's statements were protected by the rule in *Midland*, and thus we rejected the company's argument that the Board had abused its discretion by failing to conduct a hearing. *Id.* at 1158. No hearing was necessary because the evidence did not create any substantial, material issues of fact that, if resolved favorably to the employer, would warrant setting aside the election. *Id.* Even taking all of the company's allegations about the union's misrepresentations as true, we found that under the *Midland* rule those misrepresentations were not a basis for setting aside the election. *Id.*

In *ARA* and in *St. Margaret*, no hearing was required because none of the evidence proffered by the objecting party actually supported a ground for setting aside the election. By contrast, the evidence proffered by Trimm supports its contention that the Boerckels were agents of the Union, and, in turn, supports a ground for setting aside the election – a violation of the *Milchem* rule.

Situations such as this, where the determination of a single fact-based issue will be dispositive of the election's validity, clearly call for caution in the Board's resolution of that issue. In addition, we agree with the Court of Appeals for the D.C. Circuit's recent statement that "[i]n view of the factual nature of [the] determination [of agency status], an evidentiary hearing ordinarily will be required in order to resolve a dispute about the relationship between a person alleged to have interfered with a Board-supervised election and one of the parties to that election." *AOTOP, LLC v. NLRB*, 331 F.3d 100, 104 (D.C.Cir.2003). The closeness of the election results here created in the Board a duty to take particular care in its evaluation of the company's objections. *See St. Margaret*, 991 F.2d at 1156; *J–Wood*, 720 F.2d at 315. Under such circumstances, the Board abused its discretion in denying the request for an evidentiary hearing.

### III.

For the reasons set forth above, we conclude that the Board abused its discretion by failing to grant Trimm's request for an evidentiary hearing to resolve material issues of fact regarding the agency status of the Boerckel brothers, we will grant Trimm's petition for review, deny the Board's cross-application for enforcement, and remand to the Board for further proceedings consistent with this opinion.