## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## RHONE-POULENC, INC., Respondent.

### No. 85–3351.

United States Court of Appeals, Third Circuit.

Argued March 3, 1986.

Decided April 24, 1986.

Rehearing and Rehearing En Banc Denied July 15, 1986.

Rosenn, Circuit Judge, filed opinion in which he concurred and dissented.

DeMaria, Ellis & Hunt, Newark, N.J., for respondent; Ronald H. DeMaria, (argued), Peter Petrou, Guy A. Peluso, Jonathan S. Reed, on brief.

Kenneth B. Hipp (argued), Deputy Asst. Gen. Counsel, N.L.R.B., Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., for petitioner.

Before GIBBONS, BECKER, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order directing Rhone-Poulenc, Inc., the employer, to bargain with the Oil, Chemical, and Atomic Workers International Union, AFL–CIO, Local 8–948, the union. The employer concedes that it refused to bargain with the union after the Board certified it as the employees' bargaining representative. It contends, however, that the Board should not have certified the union in light of irregularities in the Board-supervised election. We reject this contention and enforce the Board's order.

### I.

On December 21, 1983 the employees at the employer's Lakewood, New Jersey plant participated in an election pursuant to a stipulated election agreement. Of forty-five ballots cast, twenty-four favored the union, and twenty opposed it; one challenged ballot was discounted. Within the five-day period specified by 29 C.F.R. § 102.69(a) (1985) the employer filed with the Regional Director a letter setting forth three objections to union conduct that allegedly affected the outcome of the election. The Regional Director advised the employer that within five days of the filing of the objections it had to furnish any supporting evidence it had available to it at that time. The employer subsequently submitted four employee affidavits that not only bore on the original objections but that also included new allegations about union threats and promises.

The Regional Director submitted a report to the Board recommending that it reject the three timely objections and certify the

union as the bargaining representative. He refused to investigate the allegations first raised in the affidavits because the employer had not presented them within five days of the election. The employer then filed a timely exception to the Regional Director's report, challenging his disposition of two of the three timely objections as well as his refusal to investigate the additional allegations. A divided three-member panel of the Board adopted the Regional Director's report and recommendation and certified the union.

In order to obtain judicial review the employer refused to bargain.[1] The General Counsel filed an unfair labor practice charge, and the Board, with one member dissenting, granted his motion for summary judgment. *See Rhone-Poulenc, Inc.*, 274 N.L.R.B. No. 129, 118 L.R.R.M. (BNA) 1494, 1494 (1985).

## II.

We first consider the employer's exception to the Regional Director's rejection of two of its timely objections. The employer objected first that representatives of the union "knowingly misrepresented to the eligible voters within the unit that the 'by-laws' of the National Labor Relations Board prohibit an employer from reducing any existing wage and benefits once a union wins the right to represent employees." Joint Appendix at 1. It also objected that the union, via two letters, misled the eligible voters into thinking that the Board was not absolutely neutral in the election. In the first letter Henry Santos, the president of the union, wrote, "Eveything [sic] I have stated here can be verified through Dawn Miller, she is the representative assigned to this election. She works for the Labor Board in Philadelphia." Joint Appendix at 4. And in the second letter he stated,

I spoke to Ms. Dawn Miller of the National Labor Board and told her of the company's threat of loss of benefits, she admits it is against the law and advises me to file a charge against the company

with the N.L.R.B. I will discuss this with all of you on the 17th.

Joint Appendix at 5.

Treating the two objections as presenting the single issue of whether a misrepresentation by an election participant invalidates an election outcome and assuming that Mr. Santos's statements reached the eligible voters, the Regional Director ruled that the misrepresentations did not justify setting aside the election. In so ruling the Regional Director applied the rule, announced in *Midland National Life Insurance Co.*, 263 N.L.R.B. 127, 131 (1982), that the Board would not probe the truth or falsity of campaign statements recognizable as originating with one of the partisans in an election.

■ The employer contends that the *Midland* rule should not apply in cases involving partisan misrepresentations about Board actions or positions. In so contending it asks us to ignore established Board policy. In *Affiliated Midwest Hospital, Inc. d/b/a Riveredge Hospital*, 264 N.L.R.B. 1094 (1982), the Board, overruling its holding in *Formco, Inc.*, 233 N.L.R.B. 61 (1977), held that, for purposes of assessing the validity of election results, it would treat partisan misrepresentations concerning Board actions or positions no differently than it treats other misrepresentations. *See* 264 N.L.R.B. at 1094–95; *see also SDC Investment, Inc.*, 274 N.L.R.B. No. 78, 118 L.R.R.M. (BNA) 1410, 1411–12 (1985). Thus, while the introduction to eligible voters of forged or altered Board documents may still result in the setting aside of an election because the partisan nature of such misrepresentations is not evident, partisan misrepresentations recognizable as such will not. *See The Coca Cola/Dr. Pepper Bottling Company of Memphis*, 273 N.L.R.B. No. 68, 118 L.R.R.M. (BNA) 1225, 1226 (1984) (rejecting objection that union official's oral misrepresentation invalidated election); *Metropolitan Life Insurance Co.*, 266 N.L.R.B. 507, 507–08 (1983) (rejecting objection that employer's oral misrepresentation invalidated election);

---

**1.** *See Aircraft Radio Corp. v. NLRB*, 519 F.2d 590, 591 n. 2 (3d Cir.1975).

*County Line Cheese Co.*, 265 N.L.R.B. 1519, 1519 (1982) (rejecting objection that employer's written misrepresentation invalidated election).

■ In light of the fact that the *Midland* rule clearly applies in the circumstances of this case, we can set aside the Board certification here only if we conclude that the *Midland* rule runs afoul either of section 9(c) of the National Labor Relations Act, 29 U.S.C. § 159(c) (1982), or of the Board's own election rules. *See NLRB v. ARA Services, Inc.*, 717 F.2d 57, 63–68 (3d Cir.1983) (en banc) (plurality opinion). We conclude that it does neither. Indeed the Board's adoption of the *Midland* rule—a move that marks a return to the position initially taken by the Board in *Shopping Kart Food Market, Inc.*, 228 N.L.R.B. 1311, 1313 (1977), and a move based on the Board's appraisal of the likely effects of partisan misrepresentations on employee free choice—is consistent with both the statute and the rules governing elections and is entitled to our deference.

### III.

We turn next to the employer's exception to the Regional Director's decision not to investigate the allegations the employer made after it filed its original objections. In its response to the Board's request for evidence supporting its three timely objections, the employer submitted, without comment or explanation, hearsay evidence alleging that one employee had made a threatening statement to other employees about the consequences of a union defeat and alleging further that another employee had been promised a promotion to shop steward if the union were to prevail. That evidence was entirely unrelated to the timely objections. Relying on *Burns International Security Services, Inc.*, 256 N.L.R.B. 959 (1981), which stands for the proposition that an employer may not expand timely-filed objections by furnishing evidence of unrelated objections unless it establishes that the evidence is newly-discovered and was previously unavailable, *see id.* at 959–60, the Regional Director refused to investigate these allegations because the evidence neither was newly-discovered nor had it been previously unavailable to the employer.

The employer does not contest the applicability of the *Burns* rule to the facts of this case. Rather, it asserts that this court's decision in *NLRB v. Campbell Products Department*, 623 F.2d 876 (3d Cir.1980), precludes adherence to the *Burns* rule. In *Campbell Products* we held that a Regional Director who had refused to investigate untimely objections to an election abused his discretion because he acted inconsistently with the policy announced by the Board in *American Safety Equipment Corp.*, 234 N.L.R.B. 501 (1978). *See* 623 F.2d at 880–82. In *American Safety Equipment* the Board held that a Regional Director should set aside an election if he or she receives or discovers evidence during an investigation that shows that the election has been tainted in a manner different from that suggested by a timely objection. *See* 234 N.L.R.B. at 501. This court noted in *Campbell Products*, however, that the Board was free to change the *American Safety Equipment* rule and to insist instead on strict compliance with its rule on the time for the filing of objections: "Having adopted the policy reaffirmed in *American Safety Equipment*, the Board retains the discretion to change its mind expressly and substitute a strict compliance policy." 623 F.2d at 882 n. 4.

In *Burns* the Board did exactly what we said in *Campbell Products* it was free to do. It limited its holding in *American Safety Equipment*, explaining that while the Regional Directors would have discretion to determine the scope of an investigation, they could consider new objections only if those objections were based on evidence that was newly-discovered and had been previously unavailable.[2]

---

**2.** The Board reasoned,

> The scheme of our objections procedure allows the losing party five working days after

■ The rules with respect to the filing of objections to election conduct, including those dealing with the time of filing of objections and the method of investigating them, are all Board-made rules. In *Campbell Products* we acknowledged that the Board had discretion to interpret those rules as requiring strict compliance. Obviously the court had to acknowledge the Board's authority in that respect, for section 9 of the National Labor Relations Act confers on the Board, not on the courts, the responsibility for supervising the choice of bargaining representatives. *Chas. S. Winner v. Teamsters Local Union No. 115*, 777 F.2d 861, 863–64 (3d Cir.1985). The Board has exercised that authority, and the *Burns* rule is entirely consistent with the Board's responsibility to resolve promptly disputes over employee selection of bargaining representatives. The employer's exception to the Regional Director's adherence to *Burns* is without merit.

### IV.

The Board did not err in holding that the two timely objections were insufficient to warrant setting aside the election. Nor did the Board err in declining to consider un-

the results are tallied in which to discover the possibility of serious misconduct which might warrant setting the election aside and to file objections. The objecting party is given a further, limited period of time in which to complete its private investigation of that alleged misconduct and promptly turn the results over to the Regional Director, who then investigates and takes appropriate action as expeditiously as thoroughness allows. The Regional Director's investigation is neither to be perfunctory nor, ordinarily, protracted. If material facts are in dispute the administrative investigation is suspended and the dispute is resolved through a hearing. But the scope of the investigation, as we made clear in American Safety, is within the informed discretion of the Regional Director. The investigation is in his or her hands; the period during which the investigation proceeds was never intended to provide more time for the objecting party to extend its own investigation in the hope of finding a basis for objection that lies beyond the matters covered in the Regional Director's investigation.

The objecting party may bring to the Regional Director's attention any newly discovered evidence that bears directly on the timely

timely objections that were based on evidence that neither was newly-discovered nor had been previously unavailable to the employer. The Board's order will, therefore, be enforced.

ROSENN, Circuit Judge, concurring and dissenting.

I disagree with the majority's reading of *Burns International Security Services, Inc.*, 256 N.L.R.B. 959 (1981), as announcing a new policy of strict compliance with the Board's five-day rule for the filing of objections. In my opinion, the Regional Director was required by the Board's past precedents to consider the allegations Rhone-Poulenc tendered after the initial five-day period but before he began his investigation. I am therefore compelled to dissent from parts III and IV of the majority's opinion. I join, however, in parts I and II.

### I.

The NLRB has a longstanding policy, recognized in *American Safety Equipment Corp.*, 234 N.L.R.B. 501 (1978), *enf. denied on other grounds*, 643 F.2d 693

objections, for such evidence is more apt to aid than to encumber him. The interest in insuring the employees were not coerced also warrants the Regional Director's consideration of unrelated misconduct, unknown to the objecting party at the time the objections were filed, the existence of which comes to its attention while the Regional Director is conducting his investigation. However, since consideration of such matters might enlarge the scope and delay the conclusion of the investigation, they normally should be considered only upon presentation of clear and convincing proof that they are not only newly discovered, but also, previously unavailable. We deem this limitation necessary in order to discourage both the piecemeal submission of evidence and the leisurely continuation of private investigations while the investigation should be under the control of the Regional Director.[3]

3. We expect that previously unavailable evidence, when truly encountered, usually will have come to the objecting party's attention unsolicited, not through a continuation of its own investigation.

265 N.L.R.B. at 960.

(10th Cir.1981), that no matter what scope a Regional Director gives his investigation, if he receives or discovers evidence during his investigation that shows that the election has been tainted, he has no discretion to ignore such evidence and it is reversible error if he fails to set aside the election.... Were we to close our eyes to objectionable conduct merely because a party has failed to frame its objections properly to include such conduct, we would make a mockery of our pledge to preserve employee rights to a fair election.

234 N.L.R.B. at 501–02.

This court in *NLRB v. Campbell Products Department*, 623 F.2d 876 (3d Cir. 1980), held that under the Board's settled policy, as reflected in *American Safety*, a Regional Director must investigate evidence of objectionable conduct brought to its attention after the initial five-day period for objections had passed. The court recognized "that the Board plainly has the *power* to compel strict compliance with its five day objection rule," *id.* at 880 (emphasis in original), but held that the Board was bound by its adopted policy until it "change[s] its mind expressly and substitute[s] a strict compliance policy." *Id.* at 882 n. 4.

Within the five-day period following initial objections provided for by Board practice and regulations, Rhone-Poulenc submitted evidence, in the form of affidavits, to support its initial objections to the union's campaign propaganda. *See* 29 C.F.R. § 102.69(a) (1985). Two of these affidavits, sworn to by a supervisor and an employee, also reported threats of violence by union supporters that if confirmed might require the election be set aside. Although he had not yet commenced his investigation, the Regional Director declined to consider the

evidence of threats tendered in these affidavits, despite his obligation under *American Safety* to investigate all evidence of objectionable behavior that he receives. He relied on *Burns* and two other cases in holding that the evidence of threats constituted an untimely objection which he was not bound to consider.[1] The Board in affirming his decision cited no authority and summarily concluded, "we are not persuaded by the facts of this case that any special circumstance exists that would justify permitting the Employer to file untimely objections."

In a well-reasoned dissent, Board Member Hunter discussed the authority relied on by the Regional Director, including *Burns*, and found it all distinguishable. Despite the assertion of the majority of this panel that "[t]he employer does not contest the applicability of the *Burns* rule to the facts of this case," Rhone-Poulenc argues at length in its brief, as Member Hunter did in his dissent, that *"Burns* is clearly inapplicable" to the present case. I agree.

## II.

This court in *Campbell Products* imposed no unusual requirement on the Board by requiring it to obey its past precedents unless it expressly rejects them. 623 F.2d at 882 n. 4. As we previously stated, all administrative agencies "have an obligation to render consistent opinions and either follow, distinguish, or overrule their own precedent." *Chisholm v. Defense Logistics Agency*, 656 F.2d 42, 47 (3d Cir. 1981). The Board, as an administrative agency, may overrule its prior precedents, "so long as the Board's new position is fully reasoned and explained, and ... the position does not exceed the bounds of the Act." *Latrobe Steel Co. v. NLRB*, 630

---

1. The other Board opinions cited as authority by the Regional Director are Parks Food Service, 235 N.L.R.B. 1410 (1978), and Tuf-Flex Glass, 262 N.L.R.B. 445 (1982), *aff'd* 715 F.2d 291 (7th Cir.1983). Both are consistent with *American Safety* and clearly distinguishable from the present case. In *Parks Food*, the union filed exceptions after the Regional Director had com-

pleted his investigation and report. 235 N.L.R.B. at 1410 n. 1. In *Tuf-Flex* also, the objections were made after the hearing officer completed his investigation and report. 262 N.L.R.B. at 445 n. 3. Such objections are untimely under *American Safety*, as this court noted in *Campbell Products*. 623 F.2d at 882 n. 4.

F.2d 171, 177 (3d Cir.1980), *cert. denied*, 454 U.S. 821, 102 S.Ct. 104, 70 L.Ed.2d 92 (1981). This requirement that the Board, as an administrative agency, expressly state its reasoning and intent to change its established policies, is fully consistent with the Supreme Court's decisions.[2]

As the Court recently stated, "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Manufacturer's Association v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 42, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). In addition to the need of the public to be informed of a change in policy, effective judicial review requires that an administrative agency changing settled procedures explicate the change in a way that allows a reviewing court to discern the policy served by the new procedure. *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade*, 412 U.S. 800, 805–06, 93 S.Ct. 2367, 2373–74, 37 L.Ed.2d 350 (1973) (Marshall, J.) (plurality opinion). An agency's factual distinction between past and present cases without an explanation of the underlying policy served by their different treatments may give the reviewing court too little guidance in evaluating the propriety of a newly altered rule. *See id.* at 807–08, 93 S.Ct. at 2374–75.

The Board's decision to depart from prior norms in carrying out the policies committed to it by Congress should as a rule be entitled to deference by the courts. A reviewing court, however, cannot determine whether the new course pursued by the Board adopts a policy "consistent with its mandate from Congress," *id.* at 806, 93 S.Ct. at 2374, unless it expressly articulates its reasons for the change. A change in policy announced by the Board will be respected if "the Board has reached a fair and reasoned balance upon a question within its special competence, ... and the Board has adequately explicated the basis of its

interpretation." *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 267, 95 S.Ct. 959, 968, 43 L.Ed.2d 171 (1975). My concern is whether the Board has met this burden in *Burns* and announced a new policy of strict compliance with its five-day rule.

### III.

In *Burns*, the Board held that a Regional Director had erred in reading *American Safety* as requiring him to consider an employer's "Supplementary Objections" filed 47 and 77 days after an election and during his investigation. Although noting that "[t]he line between evidence discovered during the investigation and new, untimely objections will not always be glaringly clear," the Board held that parties should not be allowed to file new *objections* during a Regional Director's investigation. 256 N.L.R.B. at 959.

> Entertainment of a whole new set of objections ... would vitiate our requirement that parties file timely objections. Being inundated with successive sets of objections, the Regional Director, if he had to investigate each new allegation, could be prevented from or unduly delayed in concluding his investigation.

*Id.* The Board held that new and untimely objections presented during a Regional Director's investigation normally should be considered only if the presenting party gives clear and convincing proof that they were newly discovered and previously unavailable. *Id.* at 960. The Board gave two reasons for this rule: to "discourage ... the piecemeal submission of evidence," *id;* and to prevent "the potential mischief inherent in permitting an objecting party to take control over the investigation away from the Regional Director." *Id.* at 959.

I do not think that *Burns* can fairly be read as announcing a new Board policy that henceforth no evidence of objectionable behavior would be considered after the

---

**2.** Other circuits also require that the Board explicate the policy grounds for changing its established practices. *See, e.g.,* IATSE v. NLRB, 779 F.2d 552, 555 (9th Cir.1985); Consolidated Pa-

pers, Inc. v. NLRB, 670 F.2d 754, 757 (7th Cir. 1982); NLRB v. West Sand and Gravel Co., 612 F.2d 1326, 1333 n. 5 (1st Cir.1979).

initial five-day period for filing objections, even if the Regional Director had not and could not have begun an investigation of the timely filed objections. By my reading, all the *Burns* decision established is that an objecting party may not file supplemental objections during a Regional Director's investigation without a convincing showing that the objections could not have been made previously. The Board stated that some limitation of *American Safety* was necessary to prevent objecting parties from wrongly delaying the resolution of election disputes and interfering with the Regional Director's investigation with a flurry of untimely objections. The Board did not purport, as the majority contends, to announce a new policy of strict enforcement of the five-day rule.

The circumstances of *Burns* are distinguishable from those of the present case on two crucial grounds: (1) Rhone-Poulenc submitted the affidavits supporting further objections during the period the Board specifically provides objecting parties for the submission of supporting evidence, and before the Regional Director had begun any investigation. (2) Rhone-Poulenc's allegation of unlawful threats came in the form of evidence, not conclusory or unsubstantiated objections.

It is difficult to see how Rhone-Poulenc's action implicates the Board's concern in *Burns* that late objections would cause delay and interfere with the Regional Director's control over an investigation. Rhone-Poulenc submitted its affidavits "[w]ithin 5 days after the filing of objections," the period provided by Board regulations for an objecting party to "furnish to the regional director the evidence available to it to support the objections." 29 C.F.R. § 102.69(a) (1985). The Board's longstanding regulatory scheme clearly expects an objecting party to continue its own investigation during this five-day period, with a Regional Director's investigation to follow only if the objecting party's submission of evidence is sufficient to support *prima facie* the setting aside of the election. The majority's concern that Rhone-Poulenc's affidavits may have been the result of its continued investigation is misplaced. It was Rhone-Poulenc's obligation to investigate the election during this five-day period, and it was the Regional Director's obligation to pursue Rhone-Poulenc's evidence of objectionable conduct with its own investigation subsequent to the five-day period. Rhone-Poulenc's timely submission of evidence, whether unsolicited or obtained through its investigation, did not and could not interfere with any investigation the Regional Director might subsequently make.

Further, it is incongruous and inconsistent with the policy concerns of *American Safety* for the Regional Director to read and consider that portion of Rhone-Poulenc's affidavits that support the timely objections to campaign propaganda but ignore the rest. Under *American Safety*, which the Board has not repudiated, a Regional Director may limit the scope of its investigation but must consider evidence of election taint brought to its attention during its investigation. By ignoring the evidence of possibly unlawful threats brought to his attention *before* he commenced any investigation, the Regional Director here utterly abdicated the "Board's obligation to provide voters with the 'laboratory conditions' under which they may exercise their franchise in a free and informal manner," 234 N.L.R.B. at 501, even though it meant no delay in the proceedings or challenge to the Director's control over the investigation. I cannot believe that the Board would have intended such an anomalous and stultifying result without a thorough explication of its change in policy in response to judicial mandate.

IV.

I would therefore grant Rhone-Poulenc's petition for review in part and remand the case to the Board for investigation of the threats reported in Rhone-Poulenc's affidavits.