ST. MARGARET MEMORIAL
HOSPITAL, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

International Union of Operating
Engineers, Local Union 95–95A,
AFL–CIO, Intervenor.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

ST. MARGARET MEMORIAL
HOSPITAL, Respondent,

International Union of Operating
Engineers, Local Union 95–95A,
AFL–CIO, Intervenor.

Nos. 92–3220, 92–3285.

United States Court of Appeals,
Third Circuit.

Argued Jan. 12, 1993.
Decided April 23, 1993.

John E. Lyncheski (argued), Ronald J. Andrykovitch, Jeffrey A. Van Doren, Cohen & Grigsby, Pittsburgh, PA, for St. Margaret Memorial Hosp.

Jerry M. Hunter, General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel, Nicholas E. Karatinos, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Collis Suzanne Stocking, Supervising Atty., Magdalena Revuelta (argued), N.L.R.B., Washington, DC, for N.L.R.B.

Michael R. Fanning (argued), Helen L. Morgan, Intern. Union of Operating Engineers, Washington, DC, for Intern. Union of Operating Engineers, Local Union 95–95A, AFL–CIO.

Present: HUTCHINSON, SCIRICA and ROSENN, Circuit Judges.

### OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

Petitioner St. Margaret Memorial Hospital ("St. Margaret") seeks review of an order of the National Labor Relations Board ("NLRB" or "Board") holding that St. Margaret violated sections 8(a)(1) and (5) of the National Labor Relations Act ("NLRA" or "Act"), 29 U.S.C.A. § 158(a)(1), (5) (West 1973). Respondent Board has filed a cross-petition to enforce the order. The International Union of Operating Engineers, Local 95–95A, AFL–CIO ("Union") has intervened in the appeal in support of the Board's order.

Following an election, the Board certified the Union to represent St. Margaret's eighteen skilled maintenance employees, a unit the Board found appropriate under its Final Rule on Collective Bargaining Units in the Health Care Industry ("Rule"), 29 C.F.R. § 103.30 (1992). In deciding the un-

fair labor practice charges against St. Margaret that are the subject of the petitions we are now reviewing, the Board concluded that St. Margaret violated sections 8(a)(1) and (5) of the Act by refusing to bargain with the Union. The Board rejected St. Margaret's challenge to the appropriateness of the skilled maintenance unit, one of its defenses to the charges of unfair refusal to bargain, and refused to hold an evidentiary hearing on St. Margaret's objections to Union conduct which allegedly had a material effect on the outcome of the election, St. Margaret's second defense.

For the following reasons we will deny St. Margaret's petition for review and grant enforcement of the Board's order.

## I. *Factual & Procedural History*

St. Margaret is a non-profit, acute care hospital located in Pittsburgh. Between 1947 and 1974, non-profit hospitals were exempt from coverage under the NLRA. *See* 29 U.S.C.A. § 152(2) (West 1973) (amended 1974). Congress repealed this exemption in 1974 as part of the Health–Care Amendment to the NLRA. *See* Pub.L. No. 93–360, 88 Stat. 395 (1974) (codified at 29 U.S.C.A. §§ 152(14), 158(d) and (g) (West Supp.1992)). Because of the many, seemingly interminable disputes concerning what units were appropriate for hospitals as well as the often inconsistent resolution of them, the Board engaged in notice and comment rulemaking in an attempt to formulate a general definition of the bargaining units appropriate in the health care industry. In the Board's First Notice of Proposed Rulemaking, it tentatively determined that a separate unit limited to skilled maintenance employees was not appropriate. *See* Notice of Proposed Rulemaking, 52 Fed.Reg. 25,142–49 (July 2, 1987), *reprinted in* 284 N.L.R.B. 1516. In its Second Notice of Proposed Rulemaking, however, it shifted position and decided that a separate skilled maintenance unit would be appropriate. *See* Second Notice of Proposed Rulemaking, 53 Fed.Reg. 33,-900 (September 1, 1988), *reprinted in* 284 N.L.R.B. 1528. The rulemaking process culminated in the issuance of the Final Rule on April 29, 1989.

Under the Rule, eight separate and distinct bargaining units are presumed to be appropriate in acute care hospitals except in extraordinary circumstances:

§ **103.30 Appropriate bargaining units in the health care industry.**

(a) This portion of the rule shall be applicable to acute care hospitals, as defined in paragraph (f) of this section: *Except in extraordinary circumstances* and in circumstances in which there are existing nonconforming units, *the following shall be appropriate units,* and the only appropriate units, for petitions filed pursuant to section 9(c)(1)(A)(i) or 9(c)(1)(B) of the National Labor Relations Act, as amended, except that, if sought by labor organizations, various combinations of units may also be appropriate:

(1) All registered nurses.

(2) All physicians.

(3) All professionals except for registered nurses and physicians.

(4) All technical employees.

(5) *All skilled maintenance employees.*

(6) All business office clerical employees.

(7) All guards.

(8) All nonprofessional employees except for technical employees, skilled maintenance employees, business office clerical employees, and guards.

*Provided That* a unit of five or fewer employees shall constitute an extraordinary circumstance.

29 C.F.R. § 103.30(a) (emphasis added and in original). If, however, "extraordinary circumstances" exist, the Board must determine appropriate units by adjudication. *Id.* § 103.30(b).

On April 27, 1990, in reliance on the Rule, the Union filed a petition with the Board for election and certification as the exclusive bargaining agent for the approximately eighteen skilled maintenance employees at St. Margaret. Because the American Hospital Association ("AHA") had obtained an injunction blocking implementation of the Rule, the Board suspended processing the Union's representation

petition until final resolution of the AHA's action attacking the Rule. On April 23, 1991, the United States Supreme Court upheld the validity of the rule in *American Hospital Association v. NLRB*, — U.S. ——, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991).

Nevertheless, when proceedings before the Board finally commenced in June 1991, St. Margaret challenged the appropriateness of the collective bargaining unit and attempted to present evidence showing that extraordinary circumstances existed requiring the unit to be determined by adjudication. St. Margaret argued that *American Hospital Association* only affirmed the Board's authority to promulgate the Rule and expressly reserved comment on the appropriateness of any particular units, leaving intact this Court's earlier cases holding skilled maintenance units inappropriate under the Act because they lead to proliferation of bargaining units.

In support of its arguments, St. Margaret presented an offer of proof seeking to show "that the skilled maintenance employees share a strong community of interest with other non-professional employees, and do not have wages, hours or other terms and conditions of employment so distinct from other non-professional employees so as to justify representation in a separate collective bargaining unit." Appendix ("App.") at 27a. Specifically, it alleged *inter alia* that a separate unit was inappropriate because: (1) skilled maintenance employees do not have levels of skill, knowledge and licensing markedly different from those of other non-professional employees; (2) although skilled maintenance employees have separate immediate supervision, they have a higher level supervisor in common with other maintenance departments; (3) skilled maintenance employees work throughout the facility, have contacts with all employees, and have on a few instances

been transferred from other departments; and (4) although skilled maintenance employees have a separate function and do not ordinarily engage directly in patient care, their duties are nevertheless functionally integrated with other employees. After marking St. Margaret's written offer of proof as an exhibit, the hearing officer rejected it; and, based on General Counsel Memorandum 91–3 (May 9, 1991), refused to permit St. Margaret to present evidence on the unit's inappropriateness.[1]

On June 28, 1991, the Acting Regional Director for Region 6 ("Acting Regional Director") issued a decision and direction of election. Pursuant to the Rule, he determined that St. Margaret's skilled maintenance employees were an appropriate unit. He concluded that the matters alleged in St. Margaret's offer of proof had already been considered at the Board's rulemaking proceedings and, therefore, would be insufficient to show extraordinary circumstances. He also determined that *American Hospital Association* confirmed the Board's authority to promulgate the Rule and noted that the opinion contained no reservations regarding the appropriateness of the Rule's separate bargaining unit for skilled maintenance employees.

On July 11, 1991, St. Margaret requested review of the Acting Regional Director's decision. The Board denied that request on July 29, 1991, three days after the representation election on July 26, 1991. The election resulted in eleven votes in favor of union representation and seven against.

On August 2, 1991, St. Margaret filed objections to the election pursuant to 29 C.F.R. § 102.69(a) (1992). St. Margaret alleged, *inter alia*, that Union representatives

falsely advised eligible voters that several area hospitals granted significant pay increases during pre-election periods and, therefore, St. Margaret's assertion that

---

1. Memorandum 91–3, issued by NLRB General Counsel following the Supreme Court's decision in *American Hospital Association,* offers guidelines for applying the Rule. It states that a hospital claiming extraordinary circumstances bears a "heavy burden" in demonstrating that its arguments are substantially different from those already considered by the NLRB at the rulemaking hearings. *Id.* at 5. If the hearing officer accepts the hospital's offer of proof, the officer may then either permit the evidence or refer the issue to the Regional Director for a ruling. *Id.* at 9.

significant pay increases were not permitted during the pre-election period were untruthful and contrary to law. App. at 70a.[2] The alleged misrepresentation occurred at a Union meeting held on the evening of July 23, three days before the election. St. Margaret argued that the twenty-four hour captive audience rule [3] effectively limited it to only twenty-four hours to respond to the misrepresentation.

 During an *ex parte* investigation held pursuant to 29 C.F.R. § 102.69(c) (1992) by the Regional Director for Region 6 ("Regional Director"), St. Margaret offered the testimony of its Maintenance Manager, Frank Tarwacki, who stated that shortly after the election one maintenance employee informed him that the election might have gone the other way if St. Margaret had given some across-the-board wage adjustments like other area hospitals. In addition, two maintenance employees testified that they had no knowledge of alleged wage increases at area organizing hospitals until the Union meeting on July 23. Neither of these two witnesses could specifically recall how the subject of wage increases was initiated at the meeting, but both recalled that it was discussed for several minutes. One believed that another employee may have initiated the discussion while complaining about St. Margaret's failure to grant wage increases other than those regularly scheduled. According to him, the employees then questioned the Union representatives as to why other area hospitals could grant increases during a union campaign while St. Margaret refused. According to this witness, one or more of the Union officials confirmed in-

creases at two area hospitals; however, one of the officials also stated that they were not sure if this conduct was lawful.[4] The other witness recalled that one of the Union officials commented specifically on two wage increases that nearby Shadyside Hospital had given its maintenance employees during a recent organizing campaign.

Union officials testified that they questioned employees at the meeting as to whether they had received wage increases from St. Margaret during the campaign because they were aware of wage increases granted at Shadyside during an election campaign and feared that St. Margaret might grant a similar, potentially unlawful increase. They mentioned only Shadyside Hospital by name and did not give an opinion regarding the legality of such a wage increase. According to the officials, the Union meeting on July 23, 1991 was the only time the issue of wage increases was brought up during the campaign.

Stanley J. Kevish ("Kevish"), President of St. Margaret, testified that certain employees approached him several times during the campaign, and in particular on July 15 and 16, 1991, questioning why other hospitals could grant wage increases during organizing campaigns but not St. Margaret. Upon independent investigation, Kevish learned that the other hospitals had not granted any increases beyond those that were standard and regularly scheduled. According to Kevish, on July 17, 1991, more than one week before the election, he reported his findings to at least four employees who had recently complained about the lack of wage increases.

---

**2.** St. Margaret also alleged that the Union had unlawfully persuaded employees to vote for it by offering to waive initiation fees and by promising tuition reimbursement benefits. It does not pursue these objections on appeal.

**3.** Under the captive audience rule, either party to an election is prohibited from making speeches on company time to massed assemblies of employees within twenty-four hours prior to an election. *See Peerless Plywood Co.,* 107 N.L.R.B. 427, 429 (1953).

**4.** The Act generally prohibits an employer from making promises or granting benefits to em-

ployees during an organizational campaign. *See NLRB v. Exchange Parts Co.,* 375 U.S. 405, 409, 84 S.Ct. 457, 459, 11 L.Ed.2d 435 (1964); *see also Medo Photo Supply Corp. v. NLRB,* 321 U.S. 678, 685, 64 S.Ct. 830, 833, 88 L.Ed. 1007 (1944) (employer committed unfair labor practice in offering employees wage increase to induce them to quit union). The NLRB will presume that a wage increase granted during an election campaign is unlawful unless "the employer can show that its actions were governed by factors other than the pending election." *American Sunroof Corp.,* 248 N.L.R.B. 748, 748 (1980) (footnote omitted), *modified on other grounds,* 667 F.2d 20 (6th Cir.1981).

On September 6, 1991, the Regional Director recommended that the Board overrule St. Margaret's objections and certify the Union. He assumed the truth of St. Margaret's evidence but concluded that the Union's actions did not constitute objectionable conduct. The Regional Director concluded that even "assuming that any of the versions [offered by the different witnesses] occurred," the allegedly misleading statements made by the Union were "privileged under *Midland* [*National Life Insurance Co.*, 263 N.L.R.B. 127, 133 (1982)] and not objectionable." App. at 78a–79a. On December 18, 1991, the Board accepted the Regional Director's recommendation and certified the Union as the exclusive bargaining representative for the hospital's skilled maintenance workers.

■ On December 30, 1991, the Union asked St. Margaret to bargain with it. St. Margaret refused because it believed that the Board's certification was invalid.[5] On January 6, 1992, the Union filed an unfair labor practice charge with the Board. On February 13, 1992, the Regional Director issued a complaint alleging that St. Margaret's refusal to bargain violated sections 8(a)(1) and (5) of the Act. In defense, St. Margaret continued to assert that the collective bargaining unit was inappropriate and that the Union was certified in error because (1) the Board denied the hospital an opportunity to present evidence that extraordinary circumstances made the unit inappropriate; (2) under this Court's controlling precedent, "skilled maintenance units" are inappropriate; and (3) the Board incorrectly affirmed the Regional Director's decision to dismiss St. Margaret's objections to conduct affecting the election without conducting a hearing on those objections.

On March 6, 1992, General Counsel for the NLRB moved for summary judgment arguing, *inter alia*, that it was not proper to relitigate, in an unfair labor practice proceeding, issues that were raised or could have been raised in a prior represen-

tation proceeding. On March 11, 1992, the Board postponed the hearing on the unfair labor practice charge and ordered St. Margaret to show cause why the General Counsel's motion for summary judgment should not be granted. On March 31, 1992, St. Margaret responded, again relying upon the inappropriateness of the unit and the denial of a hearing on its objections to the election.

On April 15, 1992, the Board granted summary judgment in favor of the General Counsel, concluding that St. Margaret had violated sections 8(a)(1) and (5) of the Act by refusing to bargain with the Union. The Board found that all certification issues raised by St. Margaret "were or could have been litigated in the prior representation proceeding" and that St. Margaret "does not offer to adduce at a hearing any newly discovered and previously unavailable evidence [or] ... allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding." App. at 184a.

On April 23, 1992, St. Margaret filed a timely petition for review of the Board's order in this Court. The Board filed a cross-petition for enforcement of the order on May 26, 1992. This Court permitted the Union to intervene on both petitions.

## II. *Jurisdiction and Standard of Review*

The Board had jurisdiction over the unfair labor practice charges pursuant to 29 U.S.C.A. § 160(a), (b) (West 1973). This Court has jurisdiction to review the final order of the Board pursuant to 29 U.S.C.A. § 160(e), (f) (West 1973).

■ The Board's interpretation of the Act is entitled to deference and should be upheld if it is a rational interpretation of the Act. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). The Board's factual

---

5. Because certification orders are not final appealable orders, St. Margaret had to expose itself to unfair labor practice charges in order to challenge the validity of the certification in the courts. *North American Directory Corp. v. NLRB*, 939 F.2d 74, 76 n. 2 (3d Cir.1991); *Medical Ctr. of Beaver County, Inc. v. NLRB*, 716 F.2d 995, 997 n. 2 (3d Cir.1983).

findings will be upheld if supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951); *NLRB v. Rockwood Energy and Mineral Corp.*, 942 F.2d 169, 173 (3d Cir.1991). The Board is accorded wide discretion in formulating election procedures and policies. *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); *Jamesway Corp. v. NLRB*, 676 F.2d 63, 67 (3d Cir.1982). The Board's application of those procedures and policies to specific elections, however, is reviewed to determine if there is substantial evidence on the whole record to support the Board's finding that the election was fairly conducted. *NLRB v. L & J Equip. Co.*, 745 F.2d 224, 231 (3d Cir.1984); *Jamesway*, 676 F.2d at 67.

■ Whether a unit is appropriate involves "a large measure of informed discretion" vested in the Board and is rarely to be disturbed. *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040 (1947); *see also Libbey–Owens–Ford Co. v. NLRB*, 495 F.2d 1195, 1199 (3d Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 313, 42 L.Ed.2d 272 (1974). The United States Supreme Court reiterated this standard in *American Hospital Association*, stating that the designation of appropriate units "primarily concern[s] the Board's exercise of its authority." *American Hosp. Ass'n*, ⸺ U.S. at ⸺, 111 S.Ct. at 1547. The Board may develop and apply rules regarding appropriate units "to circumscribe and to guide its discretion." *Id.* at ⸺, 111 S.Ct. at 1543. The party challenging the Board's unit determination has the burden to show "that the Board abused its discretion in determining the appropriateness of the bargaining unit in question." *NLRB v. New Enterprise Stone and Lime Co.*, 413 F.2d 117, 118 (3d Cir.1969). This burden is heavy because "employees may seek to organize 'a unit' that is 'appropriate'—not necessarily *the* single most appropriate unit." *American Hosp. Ass'n*, ⸺ U.S. at ⸺, 111 S.Ct. at 1542 (emphasis in original).

■ The refusal to conduct a hearing on election challenges can be reversed only for an abuse of discretion. *Molded Acoustical Prods., Inc. v. NLRB*, 815 F.2d 934, 939 (3d Cir.), *cert. denied*, 484 U.S. 925, 108 S.Ct. 286, 98 L.Ed.2d 247 (1987); *NLRB v. ARA Servs., Inc.*, 717 F.2d 57, 67 (3d Cir.1983) (in banc).

### III. *Appropriateness of the Bargaining Unit*

St. Margaret contends that the Board erred in certifying the Union because the skilled maintenance unit was inappropriate. St. Margaret concedes that the unit the Union petitioned for conformed to the unit of skilled maintenance employees the Rule defined as one of the units presumed to be appropriate in the health care industry; however, it continues to argue that extraordinary circumstances exist in its case that require adjudication pursuant to 29 C.F.R. § 103.30(b) before this skilled maintenance unit can be determined to be appropriate. St. Margaret also contends that the Board's actions were arbitrary and capricious because it failed to provide a reasoned explanation for its refusal to allow St. Margaret to present evidence of extraordinary circumstances. Lastly, St. Margaret contends that *American Hospital Association* only approved the Board's authority to promulgate the Rule and did not determine the propriety of the unit determinations set forth in the Rule. Therefore, according to St. Margaret, application of the Board's Rule in this case is contrary to our decisions in *Allegheny General Hospital v. NLRB*, 608 F.2d 965 (3d Cir.1979) and *St. Vincent's Hospital v. NLRB*, 567 F.2d 588 (3d Cir.1977). These cases, holding that skilled maintenance units are inappropriate because they contribute to proliferation of bargaining units, were decided prior to promulgation of the Rule and the Supreme Court's decision upholding it. We will address each argument in turn.

### A. Existence of Extraordinary Circumstances

■ St. Margaret argues that the Acting Regional Director erred in refusing to al-

low it to present evidence of extraordinary circumstances at a hearing and in failing to articulate the reasons why the offer of proof was insufficient to establish extraordinary circumstances. We disagree. The Acting Regional Director explicitly stated that the arguments presented by St. Margaret were not substantially different from those already considered and rejected by the Board in its rulemaking proceedings. In proposing the Rule, the Board set forth the reasons why it believed that skilled maintenance employees constitute a separate appropriate unit, *inter alia,* (1) skilled maintenance employees perform a distinct function in a hospital that has not been affected by any changes in the industry such as specialized facilities; (2) their skill level, education, and training tend to be considerably higher than those of service employees; (3) they are separately supervised; (4) their wage levels are much higher than wage levels of other non-professionals; and (5) they tend to have largely separate internal and external labor markets and mobile cross-industrial career paths with little cross training with other groups of employees. *See* Second Notice of Proposed Rulemaking, 53 Fed.Reg. at 33,920–21. In addition, the Board recognized, while skilled maintenance employees have contact with almost every employee in a hospital, that the limited nature of the contacts does not blur their separate identity. *Id.* at 33,921. Furthermore, skilled maintenance employees have a history of separate representation. *Id.* For these reasons, the Board concluded that a separate skilled maintenance unit comprised of "all employees involved in the maintenance, repair, and operation of the hospitals' physical plant systems, as well as their trainees, helpers, and assistants" is an appropriate unit under the Rule and that such a unit would not lead to a proliferation of bargaining units. *Id.* at 33,922, 33,923–24.

The Board clearly intended "to construe the ... exception [for extraordinary circumstances] narrowly, so that it does not provide an excuse, opportunity, or 'loophole' for redundant or unnecessary litigation and the concomitant delay that would ensue." *Id.* at 33,932. It stated:

To satisfy the requirement of "extraordinary circumstances," a party would have to bear the "heavy burden" to demonstrate that "its arguments are substantially different from those which have been carefully considered at the rulemaking proceeding," as, for instance, by showing the existence of such unusual and unforeseen deviations from the range of circumstances revealed at the hearings and known to the Board from more than 13 years of adjudicating cases in this field, that it would be unjust or an abuse of discretion for the Board to apply the rules to the facility involved.

*Id.* at 33,933 (footnotes omitted). The Board also stated that it would not consider, as extraordinary circumstances, arguments concerning variations between acute care hospitals that were raised and resolved in the rulemaking proceedings, including such matters as facility size and staffing patterns, increased functional integration, degree of work contacts, cross training, and changes in traditional employee groupings. *See id.* at 33,932.

In the instant case, the Acting Regional Director concluded that St. Margaret's offer of proof did not show any extraordinary circumstances justifying an exception to the Rule because these circumstances had already been considered by the Board during its rulemaking proceedings. We believe this sufficiently explains why the evidence St. Margaret offered was not admitted by the hearing officer.

**B. Administrative Procedure Act Claim**

St. Margaret also contends that the Board's refusal to allow St. Margaret to present evidence of extraordinary circumstances was arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C.A. §§ 551–59 (West 1977 & Supp. 1992) because the Board failed to provide a reasoned explanation for that refusal. We believe that the Board properly explained the basis of its order in its April 15, 1992 order and opinion finding St. Margaret had committed an unfair labor practice by refusing to bargain. In that opinion, the Board stated that all representation issues

raised by St. Margaret were or could have been litigated in the prior representation proceeding, and that St. Margaret "d[id] not offer to adduce at a hearing any newly discovered and previously unavailable evidence, nor does it allege any special circumstances that would require the Board to reexamine the decision made in the representation proceeding." App. at 184a. Furthermore, under § 3(b) of the Act, 29 U.S.C.A. § 153(b) (West 1973), the Board may delegate its authority to determine appropriate bargaining units to its regional director and the Board need not review the regional director's determination before issuing an unfair labor practice order based on it. *See Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 142–43, 91 S.Ct. 599, 602, 27 L.Ed.2d 735 (1971). Thus, we conclude the Board did not abuse its discretion in determining that extraordinary circumstances were not present here and that the proposed skilled maintenance unit was appropriate under the Rule.[6]

### C. Board is Bound to Follow This Court's Precedent

We must still address St. Margaret's argument that the Board was bound to follow this Court's prior holdings in *Allegheny General* and *St. Vincent's* that skilled maintenance units are inappropriate based on the Congressional admonition against proliferation of units in the health care industry because *American Hospital Association* only approved the Board's authority to promulgate the Rule and not the propriety of any specific unit determinations.[7]

As an administrative tribunal whose findings, conclusions and orders are subject to direct judicial review by courts of appeals, the Board is, of course, bound to follow the precedent of this Court. *See Allegheny General*, 608 F.2d at 970; *see also Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir.) (although agency's interpretation of statute to be given deference, courts have final word on statutory interpretation and agency bound by law of circuit), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980). *Allegheny General* and *St. Vincent's* were both decided over ten years prior to promulgation of the Rule, and neither were specifically overruled by *American Hospital Association*. A decision by this Court, unless overruled by the United States Supreme Court, is a decision of the court of last resort in this federal judicial circuit. As the Board must follow us, however, we are bound to follow the teachings of the Supreme Court and *American Hospital Association* convinces us that *Allegheny General* and *St. Vincent's* no longer control St. Margaret's case.

In *St. Vincent's*, we stated that the traditional bargaining unit factors must be balanced against the public interest of preventing fragmentation because of Congress's intent to treat the health care field uniquely. *St. Vincent's*, 567 F.2d at 592. In that case, we determined that certification of four boiler operators as a bargaining unit was improper in light of the Congressional admonition. In *Allegheny General*, we reversed a Board unit determination that did not follow *St. Vincent's* even though the Board conceded the applicability of that case, but instead based its unit determination on traditional bargaining unit standards. *Allegheny General*, 608 F.2d at 966–67. We reversed on principles of *stare decisis*.[8]

---

6. We share the confidence of the United States Supreme Court that the extraordinary circumstance exception to the Rule does exist and that the Board will recognize it in a proper situation. *See American Hosp. Ass'n,* —— U.S. at ——, 111 S.Ct. at 1547. This, however, is not such a situation.

7. This congressional admonition provided that "[d]ue consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry." *See St. Vin-*

*cent's,* 567 F.2d at 590 (quoting S.Conf.Rep. No. 988, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 3946, 3950; S.Rep. No. 766, 93d Cong., 2d Sess. 5 (1974); H.Rep. No. 1051, 93d Cong., 2d Sess. 7 (1974)).

8. Furthermore, under the Internal Operating Procedures of this court, one panel may not overrule a decision of a previous panel. Only the court sitting *in banc* may do so. United States Court of Appeals for the Third Circuit Internal Operating Procedures 9.1 (July 1990).

In *American Hospital Association* the Supreme Court considered the consistency of the Board's Rule with the Congressional admonition and upheld the Rule. *American Hosp. Ass'n,* —— U.S. at ——, 111 S.Ct. at 1547. As we had done in *St. Vincent's* and *Allegheny General,* the Supreme Court interpreted the legislative admonition as expressing Congress's intent that the Board give due consideration to any special problems proliferation might create, but held that the Board had given proper consideration to this issue in promulgating the Rule.[9] *Id.* at ——, 111 S.Ct. at 1545. The Supreme Court observed that this admonition was not law, and "[i]f Congress believes that the Board has not given 'due consideration' to the issue, Congress may fashion an appropriate response." *Id.* at ——, 111 S.Ct. at 1546.

The Supreme Court's decision that the Board Rule is valid binds us. Therefore, *Allegheny General* and *St. Vincent's* are no longer good law. Accordingly, we hold the Board did not abuse its discretion in determining that the proposed unit was appropriate under the Rule.

### IV. *Objections to Conduct Affecting the Election*

St. Margaret also contends that it was improperly denied an evidentiary hearing on its objections to Union conduct which it says affected the election. It alleged, *inter alia,* that at a Union meeting on the evening of July 23, 1991, three days before the election, the Union falsely advised eligible voters that several area hospitals had granted unscheduled wage increases during organizing campaigns; thus, the Union gave the impression that St. Margaret's position that significant pay increases were not permitted during the pre-election period was false. According to St. Margaret, this misrepresentation had a significant effect on the election because the vote was only eleven to seven in favor of Union representation, and the proffered testimony of one

maintenance employee would tend to show that the election would have gone the other way if St. Margaret had granted similar wage increases.

Congress has entrusted broad discretion to the Board to establish the procedures necessary to insure the fair and free choice of bargaining representatives by employees. *See A.J. Tower Co.,* 329 U.S. at 330, 67 S.Ct. at 327. "[T]he Board must act so as to give effect to the principle of majority rule set forth in § 9(a)" of the Act. *Id.* at 331, 67 S.Ct. at 328. In making its rules, however, the Board must consider various factors in addition to the principle of majority rule, including preserving the secrecy of the ballot, insuring certainty and finality of the election, and minimizing dilatory and unfounded claims by those opposed to the election results. *Id.* The Board's rule, therefore, must simply be "consistent with" and constitute a "justifiable and reasonable adjustment of the democratic process." *Id.* at 332, 333, 67 S.Ct. at 328, 329.

Under Board rules, objections to elections are investigated by regional directors who then prepare a report for the Board. 29 C.F.R. § 102.69(c) (1992). That report may be issued "on the basis of an administrative investigation or upon the record of a hearing before a hearing officer. Such hearing shall be conducted with respect to those objections or challenges which the regional director concludes raise substantial and material factual issues." *Id.* § 102.69(d) (1992). "The option of a hearing with respect to objections to the conduct of an election ... is solely a creature of the Board's rulemaking authority. Nothing in the statute mandates it." *ARA Servs., Inc.,* 717 F.2d at 64. Therefore, "courts must ordinarily defer to the Board's policy judgments respecting the conduct which will be deemed so coercive as to interfere with employee free choice," *id.* at 66, and investigations of election

---

**9.** In its Second Notice of Proposed Rulemaking, the Board concluded that because "there was no evidence adduced at the rulemaking hearings that establishing a separate unit of skilled maintenance employees will lead to proliferation of bargaining units in the industry," 53 Fed.Reg. at 33,922, its proposed Rule was consistent with Congress's concerns about proliferation. *Id.* at 33,934.

irregularities do not require evidentiary hearings satisfying Federal Rule of Civil Procedure 56(c) standards. *Id.* at 67. Rather, the regional director has discretion to determine whether a factual issue can be better resolved by an investigation or a hearing. *Id.*

Thus, failure to conduct a hearing with respect to objections to the conduct of an election is reviewed for abuse of discretion. *Molded Acoustical Prods., Inc.,* 815 F.2d at 939 (citing *ARA Servs., Inc.,* 717 F.2d at 67). Where elections are close, however, and a swing of two votes would have changed the result, " 'closer scrutiny of objections may be required of the Board.' " *Wells Fargo Guard Servs. v. NLRB,* 659 F.2d 363, 370–71 (3d Cir.1981) (quoting *Monmouth Medical Ctr. v. NLRB,* 604 F.2d 820, 823 n. 4 (3d Cir.1979)).

We have held that an evidentiary hearing is required if the objecting party makes a proffer of evidence sufficient to establish the existence of "substantial and material issues of fact.... [and] prima facie warrant setting aside the election." *Anchor Inns, Inc. v. NLRB,* 644 F.2d 292, 296 (3d Cir.1981). "On the other hand, an evidentiary hearing is not required when, if all the evidence proffered by the objecting party is accepted as true, no ground is produced which would warrant setting aside the election." *Id.* (citing *NLRB v. Campbell Prods. Dep't,* 623 F.2d 876, 879 (3d Cir.1980)); *accord NLRB v. J–Wood/a Tappan Div.,* 720 F.2d 309 (3d Cir.1983).

In *J–Wood,* this Court held that the regional director abused his discretion in refusing to hold a hearing on the employer's objections to the results of a close representation election where two alleged Union agents made statements prior to the election. *J–Wood,* 720 F.2d at 317. The statements, however, involved pre-election threats of reprisals against employees who failed to support the Union, not mere oral misrepresentations. *Id.* at 311. Threats have always been treated differently than

misrepresentations. *J–Wood* is therefore distinguishable from the instant case.

The alleged Union misrepresentation regarding wage increases given by another hospital during a union campaign occurred two days prior to commencement of the twenty-four hour period during which captive audience electioneering is prohibited. *See Peerless Plywood Co.,* 107 N.L.R.B. at 429. Despite St. Margaret's offer of evidence which was accepted as true, the Regional Director concluded that the statements were privileged under the Board's decision in *Midland National Life Insurance Co.,* 263 N.L.R.B. 127 (1982) and overruled St. Margaret's objections.

In *Midland* the Board had to decide whether an employer's distribution of misleading literature one day before the balloting warranted a new election. *Midland,* 263 N.L.R.B. at 128. The Board announced that it would "no longer probe into the truth or falsity of the parties' campaign statements, and that [it] w[ould] not set elections aside on the basis of misleading campaign statements." *Id.* at 133 (footnote omitted). It would intervene "where a party has used forged documents which render the voters unable to recognize propaganda for what it is." *Id.* (footnote omitted).

> Thus, we will set an election aside not because of the substance of the representation, but because of the deceptive manner in which it was made, a manner which renders employees unable to evaluate the forgery for what it is.... [W]e will continue to protect against other campaign conduct, such as threats, promises, or the like, which interferes with employee free choice.

*Id.* In doing so, the Board returned to *Shopping Kart Food Market, Inc.,* 228 N.L.R.B. 1311 (1977) to "insure the certainty and finality of election results, and minimize unwarranted and dilatory claims attacking those results," *Midland,* 263 N.L.R.B. at 131, and to " 'draw[ ] a clear line between what is and what is not objectionable.' " [10] *Id.* (quoting *General Knit of*

---

10. *Midland* overruled *Hollywood Ceramics* under which

an election should be set aside only where there has been a misrepresentation or other

*California, Inc.*, 239 N.L.R.B. 619, 629 (1978) (Member Penello, dissenting)). Accordingly, it held that " 'elections will be set aside "not on the basis of the *substance* of the representation, but the deceptive *manner* in which it was made." ... As long as the campaign material is what it purports to be, *i.e.*, mere propaganda of a particular party, the Board would leave the task of evaluating its contents solely to the employees.' " *Id.* (quoting *General Knit*, 239 N.L.R.B. at 629) (emphasis in original).[11]

St. Margaret argues that the misrepresentations in the instant case are similar to those made by the Union in *Vitek Electronics Inc. v. NLRB*, 653 F.2d 785 (3d Cir.1981), in which this Court refused to enforce the Board's order because it had failed to grant an evidentiary hearing on the employer's objections to the election. *Vitek*, however, was decided under the old *Hollywood Ceramics* rule that *Midland* repudiated. Furthermore, even under the old rule, a substantial misrepresentation will not affect the results of an election if the opponent had ample time to respond. *See Midland*, 263 N.L.R.B. at 130. In the instant case, St. Margaret had at least two full days to respond. Furthermore, there was testimony by St. Margaret's President that management was aware of the wage increase issue throughout the entire organizing campaign and he specifically recalled that the issue was raised on July 15, 1991, eight days before the alleged misrepresentation. Therefore, we reject at once St. Margaret's argument that the twenty-four hour captive audience rule destroyed the possibility of effective response.

The Board argues that we adopted the *Midland* rule without reservation in *NLRB*

v. *Rhone–Poulenc, Inc.*, 789 F.2d 188, 191 (3d Cir.1986). In that case, this Court upheld the Board's adoption of the *Midland* rule as "consistent with both the statute and the rules governing elections and ... entitled to our deference." We held, relying upon *Midland*, that misrepresentation of the law, *i.e.*, partisan misrepresentations concerning Board actions or positions, would be treated no differently than other misrepresentations. *Id.* at 190. "Thus, while the introduction to eligible voters of forged or altered Board documents may still result in the setting aside of an election because the partisan nature of such misrepresentations is not evident, partisan misrepresentations recognizable as such will not." *Id.* We concluded that the case clearly fell under *Midland* and, therefore, certification could not be set aside because the *Midland* rule did not run afoul of either § 9 of the Act or the Board's election rules. *Id.* at 191.

This Court more recently applied the *Midland* rule in *North American Directory Corp. v. NLRB*. We held that the distribution of a forged memorandum one day before the election did not require setting the election aside. *North American Directory Corp.*, 939 F.2d at 80. The memo appeared to be on paper copied from company memorandum letterhead and provided a comparison between the employer's attempt to reduce the salary of certain workers and the confidential amount of the Vice President's weekly salary, urging employees to vote Union. *Id.* at 75. The employer argued that, unlike the circumstances in *Midland*, the memo was falsely portrayed to be the employer's or, at best, of unknown origin. *Id.* We rejected the employer's argument, observing that the re-

---

similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party ... from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election.

*Hollywood Ceramics Co.*, 140 N.L.R.B. 221, 224 (1962).

11. The Board has applied *Midland* to oral as well as written misrepresentations. *See, e.g., Great Dane Trailers Indiana, Inc. v. NLRB*, 293

N.L.R.B. 384 (1989) (written and oral misrepresentations by employer concerning employees' rights to job after strike); *Blue Grass Indus., Inc. v. NLRB*, 287 N.L.R.B. 471 (1987) (oral misrepresentation by employer that Board law prevented manager from debating with union representatives); *Air La Carte, Inc. v. NLRB*, 284 N.L.R.B. 471 (1987) (oral misrepresentation by shop steward that if employees went non-union they would lose health, seniority and pay scale benefits).

gional director found that the forged memorandum was clearly recognizable as having been prepared by someone other than the employer and therefore partisan propaganda, *id.* at 79, and that his finding was supported by substantial evidence. *Id.* at 80. We also stated that adopting the arguments of the employer and reversing the election would

> ignore[ ] the philosophical basis of the *Midland* ... rule which is that 'employees are mature individuals who are capable of recognizing campaign propaganda for what it is,' and the resulting policy that as long as campaign material is recognizable as propaganda of a particular party, the Board will leave the task of evaluating its contents solely to the employees.

*Id.* (citations omitted).

The *Midland* rule has become well established in other courts of appeals. *See, e.g., NLRB v. Hyatt Hotels, Inc.,* 887 F.2d 109, 111–12 (6th Cir.1989); *NLRB v. Cal–Western Transport,* 870 F.2d 1481, 1489 (9th Cir.1989); *C.J. Krehbiel Co. v. NLRB,* 844 F.2d 880, 883–84 (D.C.Cir.1988); *State Bank of India v. NLRB,* 808 F.2d 526, 538–39 (7th Cir.1986), *cert. denied,* 483 U.S. 1005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); *NLRB v. Best Prods. Co., Inc.,* 765 F.2d 903, 911–13 (9th Cir.1985). The rule has not, however, escaped criticism and some courts have carved exceptions in it when the misrepresentations are so pervasive and deceptive that *Midland*'s assumption that employees will be able to distinguish truth from falsehood in campaign propaganda is undermined. *NLRB v. Affiliated Midwest Hosp., Inc.,* 789 F.2d 524, 528 n. 3 (7th Cir.1986) (citing *Van Dorn Plastic Mach. Co. v. NLRB,* 736 F.2d 343, 348 (6th Cir.1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1173, 84 L.Ed.2d 323 (1985) and *NLRB v. New Columbus Nursing Home, Inc.,* 720 F.2d 726, 730 (1st Cir.1983)). In *New Columbus,* the United States Court of Appeals for the First Circuit noted that "[s]ome misrepresentations may be so material and fraudulent as to undermine the employees' freedom of choice, rendering their section 7 right to self-organization a nullity." *New Columbus,* 720 F.2d at 729.

If this were the case, the Board's insistence upon certifying the fraudulent election, based on *Midland,* might constitute legal error. *See id.; see also Van Dorn,* 736 F.2d at 348 (reluctant to be bound by *Midland* in every case but agreeing that Board should set aside election based only upon deceptive manner in which representation is made and not substance of representation).

We believe that under the circumstances here the *Midland* rule was properly applied. The alleged misrepresentation was made by Union representatives at a Union pre-election meeting at least three days prior to the election. The issue had been a matter of discussion with St. Margaret's management throughout the protracted certification proceedings. The hospital knew it was an issue and had a fair opportunity to explain its position. The Regional Director did not abuse his discretion in refusing to refer the election challenge to a hearing officer.

In reviewing the Regional Director's report and recommendation, the Board had to consider whether St. Margaret's exceptions raised substantial and material factual issues. *See ARA Servs., Inc.,* 717 F.2d at 67. There was no additional evidence proffered to the Board other than that which the Regional Director had already considered. Even assuming all of St. Margaret's objections could be substantiated, no factual issue of sufficient materiality was presented. *See Anchor Inns,* 644 F.2d at 296. The Board, like the Regional Director, did not abuse its discretion in refusing to refer the matter to a hearing officer.

## V.

For the foregoing reasons the petition for review will be denied and the Board's cross-petition for enforcement will be granted.